[Crim. No. 15760. Second Dist., Div. Five. Dec. 31, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH WEST, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REPPY, J.**—Defendant was charged by information with a violation of section 211 of the Penal Code (robbery). After motions to suppress evidence were denied, and proper waivers were obtained, defendant was tried before the court without a jury. He was found guilty of second degree robbery and was committed to the Youth Authority for the term prescribed by law. The appeal is from the judgment. A purported appeal from an order denying a motion for new trial is dismissed.

On March 28, 1968, the defendant robbed L's Taco Stand at 10203 South Central Avenue in Los Angeles at about 8:30 p.m. By intimidating conduct, including the threat of the use of a gun, defendant put a woman attendant at the taco stand window in fear and caused her to place all of the money in the cash register in a paper bag. He went to a waiting automobile with two confederates in it but ran off when he was shot at by another woman employee who had been alerted. The victim got a good look at defendant and gave a description of him to the police.

On March 29, 1968, defendant was arrested at his home on a tip from an arrestee in an unrelated robbery occurrence. In a search incident to the arrest a paper bag containing coins and an inoperable revolver were found in an overcoat hanging in defendant's bedroom closet. The victim identified defendant in a lineup conducted on March 30th. It was the physical evidence and the lineup identification which defendant moved to suppress. The ground of the motions was that the police lacked probable cause to arrest defendant because the informer was not reliable and there was insufficient corroboration and therefore the securing of both items of evidence was a product of the illegal arrest. In the trial the physical evidence and the fact of the lineup identification were received by the court. The victim also made an in-court identification which defendant asserts is an exploitation of the lineup identification.

Defendant contends that the evidence should have been suppressed and that its receipt was error of such a magnitude that it could be classified as not prejudicial beyond a reasonable doubt.

We have examined the record with respect to the nature of the tip-off by the nonreliable[1] informer and of the corroboration, and we have determined that the evidence as to each, in combination, was not insufficient. Therefore, it is unnecessary to make a determination as to what effect the nonavailability of the physical evidence and the lineup identification should have had on the mind of the trial court. We summarize the facts concerning the tip-off and its sequel and explain our position.

On the morning of March 29, Officer Helvin, a robbery investigator of the Los Angeles Police Department, was interviewing an individual under arrest for two attempted robberies the previous evening. The arrestee admitted the attempts and then was asked if there were any other robberies that he knew about. The arrestee stated that he knew of two individuals by name who had been robbing small businesses, particularly taco, barbecue, and hot dog stands. He gave Kenneth West as the name of one of them. He described West "as a male Negro, around twenty-two, fairly tall and thin, and with a slight mustache." He described the second party as "a male

---

[1]The informer was considered nonreliable by the People as well as the defendant.

Negro approximately twenty-five, around five ten, and somewhat heavier and stockier than . . . [West and with a].quo vadis type haircut."[2] He stated that West and the other man had committed a robbery of a taco stand the previous evening at 103d and Central Avenue and that they had recently committed a robbery of a barbecue stand on West Jefferson Boulevard and of a hot dog stand on Adams in the Crenshaw area. The last two locations were in Officer Helvin's district, and he was acquainted with the fact that within the last week there had been two such robberies at those locations. To check on the first-mentioned robbery, he called the "77th detectives." He learned that a robbery had occurred at "L's Taco Stand" at approximately 8:55 p.m. the previous evening at 10203 South Central Avenue. The detectives gave Helvin the victim's description of the person said to have been the active participant. He was described as a "male negro, twenty-five, five eleven, 160, black hair, brown eyes, light-complexioned, thin mustache. . . ."

The arrestee gave Officer Helvin the address of 3802 West 27th Street, apartment 12, as that of the second party. The officer went there about 11 a.m. and was freely admitted. Inside he observed a male Negro who was approximately 25, around 5' 9", well built and with a "quo vadis" hairdo. He appeared to the officer to be the person whom the arrestee had identified. He arrested him. There was a woman in the apartment who, upon inquiry by Officer Helvin after the arrest, stated that she knew a person by the first name of "Kenneth" who frequented the apartment. She gave the officer the address of 833 East 102d as the residence of Kenneth. Officer Helvin then dispatched another officer to that address and the arrest of defendant already described occurred.

The arrestee interviewed by Officer Helvin was a nonreliable informant. ■ Acceptable "reliability" generally is achieved when prior identification of a particular participant in a crime has proven to be correct; when the informer has shown himself willing to counter the code of criminal confederacy in order to curry favor with the police. (Witkin, Cal. Evidence (2d ed. 1966) Exclusion of Illegally Obtained Evidence, § 111, p. 110.)

■ Fact material obtained from a nonreliable informant, standing alone, cannot provide probable cause for arrest. However, such information plus adequate corroboration can provide such probable cause. (*People* v. *Gallegos,* 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174].) It is generally held that for corroboration to be adequate, it must be of defendant's involvement in the crime itself. Accuracy as to information about the suspect not related to the illegal activity, by itself, is insufficient. (See *People* v. *Gallegos, supra,* 62 Cal.2d 176, 179; *People* v. *Reeves,* 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393].) However, it is our feeling that accuracy

---

[2]This terminology was explained as meaning a straightened hair arrangement.

of the informant's revelations in these other respects, plus the circumstances of his admitting his own transgressions, thins the coating of nonreliability so that the corroboration of defendant's involvement in the crime itself need not be as strong as otherwise might be the case.

In the instant situation the arrestee's accuracy with respect to these subsidiary factors could not help but be impressive: The informant's knowledge about the location and nature of the three robberies (which were ones other than those for which he was under investigation); his description of defendant's cohort; his knowledge of the cohort's address; his knowledge of the name of defendant; and his indication that defendant and his cohort were buddies from the circumstances that they worked the robberies together. The matching of the arrestee's description of the cohort was proved out by Officer Helvin's personal observation of him at the apartment. ■ The coincidence of the association of the two suspects was established by the statements made by the cohort's girl friend at the apartment. This is not to be classified as further nonreliable information, even though the girl may have wished to gain favor with the officer so that she could help her boy friend, since it did not point to involvement in illegal activities.

■ The corroboration of defendant's involvement in the crime itself consisted of the matching of the quite detailed descriptions of the defendant given by the informant and given by the victim, in light of the equivalence of the date, time and location of the robbery and the character of the establishment robbed as given by the informant and as disclosed on the police report.

We conclude that there was adequate corroboration.

We do not reach the problem of whether the lineup evidence is inadmissible because of its being an exploitation of an illegal arrest or detention.

The judgment is affirmed; the appeal from the order is dismissed.

Stephens, Acting P. J., and Aiso, J., concurred.