[Crim. No. 7634. First Dist., Div. One. Apr. 2, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES GARNETT, Defendant and Appellant.

**COUNSEL**

Brian Rohan and Rohan & Stepanian for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Defendant James Garnett was convicted after a court trial of possession of marijuana, a violation of Health and Safety Code section 11530. He appeals from the judgment and sentence thereafter rendered.

The questions presented relate to the legality of a search of certain premises and of the search warrant upon which the search was based.

A police officer's affidavit, in support of the subject search warrant, related in part: "A reliable and confidential informant . . . advised your affiant on or about January 30, 1967, said informant observed Robert Sweazy in possession of about one ounce of Marihuana at 1470 Washington Street, aka The Orb Theatre, aka the 1470 Washington House during the nighttime. Further the aforedescribed premises are occupied by several persons in addition to Robert Sweazy. Said informant further stated that he observed several persons using Marihuana in The Orb Theatre located in

the basement of the above described building and also on the first and second floors of said building on January 30, 1967. . . . [¶] Said informant further advised that he observed Robert Sweazy in possession of Marihuana on several recent occasions both at night and during the day at The Orb Theatre aka 1470 Washington Street. Further, your affiant with other Agents arrested Robert Sweazy in possession of Marihuana in the city of San Francisco on 11/30/66, on which occasion Sweazy gave his address as 1470 Washington Street, San Francisco." Elsewhere in the affidavit it was established that the informant was in fact reliable; no contention to the contrary is made.

The search warrant, which issued February 6, 1967, authorized search of "those certain premises, including all rooms and building used in connection with the premises and adjoining same, and in any receptacle or safe therein, which premises are commonly called and designated as 1470 Washington Street and The Orb Theatre."

The 1470 Washington Street premises consisted of a building with three floors and a basement. The officer executing the affidavit had never been inside the premises. The informant had explained to him that the place was a "commune,"[1] and "people would move into a room as they felt like it." Except as indicated, the officer had "no information as to the type of premises, number of people, rental arrangements."

▆▆ In execution of the warrant the police officers found the front door of 1470 Washington Street to be open. Immediately upon entering they observed marijuana. In the ensuing search, in addition to other contraband, they made at least 17 separate seizures of marijuana in the form of cigarettes, cigarette butts, and bricks, and loosely contained in pouches, bags and bowls. The bricks each weighed a kilogram (2.2 pounds); 24 in all were found. As expected, the officers found a "communal type affair," "people kept wandering out of the kitchen, going from room to room." Asked which room he lived in, one of the residents replied, "All over the place." Only one of the rooms of the building, a third floor room, was locked; its padlock was removed by pulling the screweyes "out from the wood." Inside this room was a closet in which the officers found 21 bricks of marijuana. This contraband was directly tied to Garnett by fingerprint evidence; it apparently formed the principal basis of his conviction.

Garnett first contends, "The search warrant did not particularly describe the place to be searched, allowing a blanket 'general search' of the entire building."

---

[1] Defined by Webster's New International Dictionary (2d ed.) as "[A] social organization in which the life of the individual is almost blended with that of the community, or in which the relationship of the individuals has something of the intimacy of family life."

■ This contention is without merit. The search warrant, as we have indicated, authorized a search of the building known as 1470 Washington Street and The Orb Theatre and all rooms and buildings used in connection with the premises and adjoining same, and in any receptacle and safe therein. Since the object of the authorized search was clearly the *whole building,* and not any specific portion thereof, the warrant sufficiently described the "place to be searched."

In *Steele* v. *United States, No. 1,* 267 U.S. 498 [69 L.Ed. 757, 45 S.Ct. 414], the government obtained a warrant directing search of a four-story building described as "611 W. 46th Street" and "any building or rooms connected or used in connection" therewith. The entire building was leased to Steele; it housed two separate business establishments with separate street numbers, 609 and 611, but without any substantial separating barriers or partitions. Concluding that the warrant described the place to be searched with sufficient particularity, and that the resultant search did not "go too far," the court stated (p. 503 [69 L.Ed. at p. 760]): "The description of the building as a garage and for business purposes at 611 W. 46th Street clearly indicated the whole building as the place intended to be searched. It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." California has followed the rule of *Steele* v. *United States, supra;* see *People* v. *Fitzwater,* 260 Cal.App.2d 478, 486 [67 Cal.Rptr. 190]; *People* v. *Estrada,* 234 Cal.App.2d 136, 146 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307]. In the case at bench, also, the officers could readily ascertain and identify the place to be searched.

Another assignment of error is stated as: "The facts in the affidavit in support of the search warrant did not give rise to probable cause to search defendant's room on the third floor."

■ In determining this issue, whether the search warrant's supporting affidavit furnished probable cause for the search of the third floor room, it is well to have in mind certain basic rules recently reiterated in *Skelton* v. *Superior Court,* 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485]. The court there said (pp. 149-150): "As the court stated in *Aguilar* [*Aguilar* v. *Texas,* 378 U.S. 108 (12 L.Ed.2d 723, 48 S.Ct. 1509)], 'An evaluation of the constitutionality of a search warrant should begin with the rule that "the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests." ' Thus when a search is based on a warrant (and therefore on a magistrate's rather than a police officer's determination of probable cause) the reviewing courts 'will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant." . . . [citation]

and will sustain the judicial determination so long as "there was substantial basis for [the magistrate] to conclude . . . ." ' that the contraband was probably present. [Citation.] ■ In order for a search warrant to satisfy the constitutional requirement of probable cause, the affidavits upon which it is based must contain competent evidence 'sufficient to support the finding of the magistrate.' [Citation.] ■ In determining the sufficiency of an affidavit for the issuance of a search warrant the test of probable cause is approximately the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury [citations], namely, whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion of the guilt of the accused. [Citation.] ■ While it is clear that probable cause does not require as strong evidence as is needed to convict [citation], the exact quantum of evidence which will constitute probable cause must be judged in light of the facts and circumstances of each case. ■ The rules of appellate review recognize the impracticality of establishing a precise calculus by which the existence of probable cause is to be determined: the warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony. [Citations.]"

And we note the comment of *United States* v. *Ventresca,* 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]: "[W]here reason for crediting the source of the information is given, and when a magistrate has found probable cause, the court should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common sense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants"; and that of *People* v. *Scott,* 259 Cal.App.2d 268, 279 [66 Cal.Rptr. 257], to the effect: "An affidavit for a search warrant is to be interpreted in a realistic and commonsense fashion."

■ The magistrate had before him information that several persons occupying the building in question were possessing and using narcotics on at least three separate floors of the building. Added to this was the information recently given by Robert Sweazy, when, without stating any apartment or room number or floor, he gave his address simply as 1470 Washington Street. The magistrate could reasonably conclude, as he did, that narcotics were probably to be found throughout the building. Any attempt to direct

a restricted search of a floor, room or other segment of the building would not square with the "commonsense" requirement of *United States* v. *Ventresca, supra,* 380 U.S. 102, 109, and *People* v. *Scott, supra,* 259 Cal. App.2d 268, 279.

In *People* v. *Fitzwater, supra,* 260 Cal.App.2d 478, 483, an affidavit for issuance of a search warrant recited, as pertinent, " 'that said subject Fitzwater has dangerous drugs and narcotics in his possession at the warehouse of the Hart Trucking Company, 121 West 33d Street, Los Angeles,' " California, occupied by Hart Trucking Company. The Hart Trucking Company occupied a block-long fenced-in lot in which was a "warehouse," a separate office building, and a "van" from which the wheels had been removed. Concluding that the premises were in fact a single integral unit the Court of Appeal saw probable cause to search all three of the separate "units."

■ Garnett argues that the 1470 Washington Street premises consisted of several separate living units. This does not appear on the face of the officer's affidavit and was contrary to the information known to the officer. And later, on a motion under Penal Code section 1538.5 to suppress the evidence found in the closet, the superior court found that such was not the fact. This conclusion is well supported by the evidence we have pointed out.

A factual situation closely similar to that before us is found in *People* v. *Gorg,* 157 Cal.App.2d 515, 522-523 [321 P.2d 143]. There three unrelated persons "lived in this flat, sharing the living room, kitchen, bath and halls. The three bedrooms opened on these rooms and were not locked." A search warrant directing a search of the premises occupied by one Fontaine was used in the search of a bedroom occupied by Gorg. Gorg "contended that a warrant issued in the name of one tenant of a house does not authorize the officers to search those parts of the premises not occupied by the person named in the warrant." Accepting the rule argued for by Gorg the court held it was nevertheless inapplicable since "All of the rooms constituted one living unit." The rule was held to apply only "where these are separate and distinct living quarters occupied by different persons."

The rationale of *People* v. *Gorg, supra,* was followed in *People* v. *Coulon,* 273 Cal.App.2d 148 [78 Cal.Rptr. 95]. An application for a search warrant was supported by affidavits of deputy sheriffs. The first deputy's affidavit stated (p. 151): "[R]eported information received by another police department from an informant who said that during the early morning hours of July 5, 1968, he had driven with four persons to a

'hippy [*sic*] ranch' somewhere in the Iron Gate Dam area; that these persons delivered six kilos of marijuana, plus methedrine, 'smack,' mescaline and LSD to 'some hippies who took it into the house on the ranch'; that darkness prevented the informer from describing the location in more detail." The second affiant declared (p. 151): "[T]hat he was familiar with all the ranches in the northeastern portion of Siskiyou County; that in January 1968 he had been at the 'Old Quadros Ranch' assisting in a narcotics arrest. . . . '[T]he Old Quadros Ranch . . . is the only ranch in the northeast portion of the county which is regularly occupied by hippies. The owner of the ranch is absent, and the premises are leased or otherwise occupied with the consent of the owner by hippies. When I was on the premises in January, 1968, there were ten adults and two children who claimed to be living in the house. At that time the smell of marijuana was very strong in the house, but none was observed. [¶] The premises consist of 640 acres, approximately, upon which there is a house, barn and two outbuildings. I have today [i.e., July 6, 1968] observed, in addition, 1 tepee and 5 campsites on the premises and seven adults who appeared to be at home on the place, some in typical hippy [*sic*] garb, some naked, doing gardening, carrying water, and other household chores.' "

On the basis of the affidavits a magistrate issued a search warrant "commanding search of 'the house, outbuildings, tepees, and campsites at the Old Quardros Ranch in Siskiyou County, as well as the persons in residence there for the following: Marijuana, methedrine, heroin, morphine, mescaline, and LSD. . . .' " In executing the warrant the officers found narcotics in a camp near a creek on the ranch.

The Court of Appeal found probable cause for the issuance of the warrant and upheld the search and seizure by the officers, stating (p. 156): "The affidavits portrayed to the magistrate a single establishment, a large rural property occupied by a house, outbuildings and camps. The camps were separated by space alone, undivided by physical boundaries or the figurative lines of separate tenancies. Of so much the officers were aware. Beyond that, they knew only that a sizeable quantity of narcotics had been delivered at the ranch house and that a group of adults and children inhabited the house and surrounding ranch property. Concerning these people, their familial relationships, their living arrangements, their identification with one area or another of the ranch, their mobility or stability in relation to any particular sleeping and cooking site, the officers knew nothing. There was no reason to assume that the narcotics remained in the ranch house or that the persons who had taken it into the ranch house con-

tinued to inhabit that particular structure. Rather, there was probable cause to believe that the contraband, either in bulk or in distributed portions, might be found anywhere on the ranch. To trace the narcotics to compressed spheres of suspicion within the general confines of the ranch would have entailed an elaborate undercover investigation or a self-frustrating giveaway. The entire ranch was suspect."

■ We hold on the record before us that the conclusion of the magistrate and the trial court that there was probable cause to search the entire building at 1470 Washington Street was reasonable and without error.

The next contention is "The search warrant was not executed in compliance with" Penal Code section 1531. It is urged that prior to entering the building the police did not give notice of their "authority and purpose" as required by that section.

■ A conflict appeared as to whether the building's door was open, or ajar, or closed when the police arrived, and as to just what they said and did prior to and upon entering. At the trial, earlier testimony, taken before the grand jury and at a hearing on motion to suppress evidence, was admitted in evidence and relied upon by both parties. At the grand jury hearing, February 14, 1967, an officer testified that when he and other police arrived, the door was "standing just ajar," that they entered, *identifying themselves "as police officers at that time"* to persons who were immediately inside the door. A year later, February 16, 1968, at the Penal Code section 1538.5 suppression proceedings the same officer testified, "We went up to the front door, and I believe it was just ajar, and entered the premises" and also "that the door was open" and he walked in. Admittedly, at least one occupant of the building was "sitting right in front of the front door"; this defense witness testified on March 1, 1968, that the door was closed "to the best of my knowledge—this was a year ago." On the same date, asked whether the door was "open or closed when you came up," the officer witness replied, "I don't recall, myself, at this time." The conflicts were resolved by the trial court against Garnett. This resolution must be respected by us. (See *People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911].)

The immediate question before us then, resolves itself to whether as a matter of law police, executing a valid search warrant and finding an open door with occupants of the building immediately behind the doorway, substantially comply with Penal Code section 1531 by entering the building, announcing as they do that they are police officers.

Penal Code section 1531 and its sister statute, section 844,[2] require that in entering a building in execution of a search warrant or to make an arrest, the ·police give notice of their "authority and purpose." (See also *People* v. *Rosales,* 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489].) *Rosales* (p. 302) and *Greven* v. *Superior Court,* 71 Cal.2d 287, 292 [78 Cal.Rptr. 504, 455 P.2d 432], hold that identification as police officers *without* an express announcement of purpose, alone may constitute substantial compliance with sections 1531 and 844 "if the surrounding circumstances made the officers' purpose clear to the occupants."

 We encounter no difficulty in concluding that the trial court could reasonably have determined that the "purpose" of the known police officers, in entering a building openly pervaded with narcotics, was obvious to its occupants. So the issue narrows further to whether the trial court could reasonably have inferred that the officers *prior to entry* gave "notice of their authority" as required by section 1531 and *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 293. Here the trial court considered testimony that the officers upon entering the open door identified themselves *"as police officers at that time."* It seems as reasonable to infer therefrom that the "identification" immediately preceded the entry as to conclude that it occurred during the split second when the foot of the first policeman actually crossed the threshold. This being so, we are obliged to accept the inference drawn by the trial court. It is for the trial court, not this court, to determine which of conflicting, but reasonable, inferences should be drawn. (*People* v. *Showers,* 68 Cal.2d 639, 644-645 [68 Cal.Rptr. 459, 440 P.2d 939].)

The conclusion reached by the trial court recognizes and honors the reasons for the rule requiring notice of the police identity as stated in *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292-293. The notice given here, with the accompanying nonviolent entry through an open door, did no greater insult to "the individual's right of privacy in his house" than is implicit in any search warrant. And the occupants were given timely warning that police were entering, thus lessening the probability of the

---

[2]Penal Code sections 1531 and 844 are identical in principle so far as their announcement requirements are concerned. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 292, fn. 6 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Garber,* 275 Cal.App.2d 119, 131 [80 Cal.Rptr. 214]; *People* v. *Villanueva,* 220 Cal.App.2d 443, 447 [33 Cal. Rptr. 811].)

"situation conducive to violence" that would inevitably attend the forcible entry of unannounced, unidentified, and ununiformed strangers.

It becomes unnecessary to pass upon Garnett's remaining argument that "The search of the third floor room cannot be justified as incident to the arrest on floors one and two."

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied April 21, 1970, and appellant's petition for a hearing by the Supreme Court was denied May 28, 1970. Peters, J., was of the opinion that the petition should be granted.