4 Cal.3d 747 (1971)
484 P.2d 583
94 Cal. Rptr. 607
THE PEOPLE, Plaintiff and Respondent,
v.
ALLAN FEIN, Defendant and Appellant.
Docket No. Crim. 15213.
Supreme Court of California. In Bank.
May 5, 1971.
*750 COUNSEL
Harvey A. Schneider, under appointment by the Supreme Court, for Defendant and Appellant.
Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Michael R. Botwin, Deputy Attorney General, for Plaintiff and Respondent.
OPINION
BURKE, J.
Defendant, having waived trial by jury, was convicted of possession of marijuana (Health & Saf. Code, § 11530), and possession of restricted dangerous drugs (Health & Saf. Code, § 11910). Prior to trial defendant moved pursuant to Penal Code section 1538.5 to suppress certain evidence found subsequent to his arrest, which motion was denied. Defendant now appeals from the judgment of conviction.
(1) Defendant's primary contention is that his motion to suppress should have been granted since the arresting officer was without reasonable cause to arrest him, a contention which may be reviewed on appeal from the judgment of conviction (People v. Kellett, 1 Cal. App.3d 704, 712 [81 Cal. Rptr. 917]). We have concluded that the judgment should be reversed for the reason that the evidence against defendant should have been ordered suppressed as the product of an illegal search.
The facts leading to defendant's arrest are as follows: Officer Miller received information from two untested informants that one "Al" was selling narcotics, "mainly dangerous drugs." The informants gave the officer Al's physical description, indicated that he drove a dark blue Mustang convertible, and stated that the apartment where he allegedly carried on his unlawful activity was also occupied by two female companions. *751 At about 8:15 on the night of the arrest, Officer Miller and his partner went to the address given by the informants and observed on the mailbox for apartment 207 the names "Sutherland" and "A. Fein." A blue Mustang convertible was parked in the carport to the rear of the apartment.
Officer Miller went to the door of apartment 207, knocked and a female voice from inside asked "Who's there?" The officer stated, "Police officers. Narcotics Investigation." The reply from the same female voice was "Just a minute." The officer then heard noises from within the apartment which sounded like people moving about and running, together with a noise described as "like a plastic type vial landing or falling to a hard floor surface." After a lapse of about 30 seconds, the door was opened about 1 1/2 feet by codefendant Michelle Sutherland. When the officer asked if "Al" was there, Sutherland opened the door completely, stepped backwards and said, "Yes, he's the one on the couch." The officer observed defendant Fein seated on the couch in the apartment, in company with another female codefendant, stepped into the apartment about 3 feet and stated that he, the officer, had a complaint concerning the use and selling of narcotics at the location. The officer could observe lying on an end table what appeared to him to be two burnt marijuana seeds. The officer retrieved these two seeds from the end table, placed them in an envelope and then in his pocket. Thereupon, he arrested defendant, Miss Sutherland, and two other persons then in the room. Following the arrest, Officer Miller conducted a search of the apartment. The search[1] revealed (1) 18 seconal tablets wrapped in a plastic bag and concealed in a small wooden chest which was sitting on the coffee table in front of the couch where defendant had been seated; (2) a jar of marijuana under a derby hat on a night stand in the bedroom. Defendant was convicted for the possession of these two items of contraband.
At the trial, Sutherland testified in substance that defendant was not a resident of the apartment, that the pills and marijuana found in the apartment belonged to her, and that defendant had no knowledge of their presence. She did admit that sometimes defendant would assist in paying the rent. She stated on cross-examination that "maybe he took it [rent money] down to the manager but it wasn't his money." She indicated that her sister had registered in the apartment in defendant Fein's name. It was stipulated that Mrs. Beck would testify that she was the manager of the *752 apartment, and that the apartment was initially rented to three persons, one of whom was defendant.
Defendant contends (1) that the officers' entry into the apartment was illegal; (2) that even if the entry was proper, the subsequent arrest was without reasonable cause; and (3) that in any event the evidence failed to show that defendant had possession of the contraband found in the apartment. We have concluded that defendant's arrest was without reasonable cause; accordingly we need not consider his other contentions.
(2) Since the search was conducted without a warrant, the prosecution had the burden of showing proper justification therefor. (People v. Superior Court, 3 Cal.3d 807, 812 [91 Cal. Rptr. 729, 478 P.2d 449].) (3) If the officers had reasonable cause to arrest defendant, the search would have been justified as incident to a lawful arrest. (Id. at p. 812.) (4) A peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person arrested has committed a felony. (Pen. Code, § 836, subd. 3.) "Reasonable cause" has been defined as "that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (People v. Terry, 2 Cal.3d 362, 393 [85 Cal. Rptr. 409, 466 P.2d 961]; People v. Ross, 67 Cal.2d 64, 69 [60 Cal. Rptr. 254, 429 P.2d 606].) (5) No exact formula exists for determining reasonable cause, and each case must be decided on the facts and circumstances presented to the officers at the time they were required to act. (People v. Terry, supra, at p. 393; People v. Ross, supra, at pp. 69-70.) However, it has been noted that "because `the informed and deliberate determinations of magistrates empowered to issue warrants ... are to be preferred over the hurried action of officers ...' a greater showing of probable cause is required to justify an arrest without a warrant than to justify a search pursuant to a warrant. [Citations.]" (People v. Madden, 2 Cal.3d 1017, 1023 [88 Cal. Rptr. 171, 471 P.2d 971].)
Although the information which the officers received from their untested informants justified further investigation, that information standing alone was not sufficient to constitute reasonable cause for an arrest or search. (Mann v. Superior Court, 3 Cal.3d 1, 6-7 [88 Cal. Rptr. 380, 472 P.2d 468]; People v. Lara, 67 Cal.2d 365, 374-375 [62 Cal. Rptr. 586, 432 P.2d 202]; People v. Talley, 65 Cal.2d 830, 835-836 [56 Cal. Rptr. 492, 423 P.2d 564].) (6) Of course, information given by an untested informant may be sufficient if corroborated in essential respects by other facts, sources or circumstances. (People v. Lara, supra, at pp. 374-375; People v. Talley, supra, at pp. 836-837.) The People contend that the informants' reliability was corroborated by the fact that certain information furnished *753 by them proved to be correct, such as defendant's first name, his presence at the apartment, and the presence of the blue Mustang. (7) However, in order for corroboration to be adequate, it must pertain to defendant's alleged criminal activity; accuracy of information regarding the suspect generally is insufficient. (People v. Gallegos, 62 Cal.2d 176, 179 [41 Cal. Rptr. 590, 397 P.2d 174]; People v. Reeves, 61 Cal.2d 268, 274 [38 Cal. Rptr. 1, 391 P.2d 393]; People v. Abbott, 3 Cal. App.3d 966, 971 [84 Cal. Rptr. 40]; People v. West, 3 Cal. App.3d 253, 256 [83 Cal. Rptr. 223].)
The People also contend that since there were two informers, the statements of one corroborated the statements of the other. (See People v. Sheridan, 2 Cal. App.3d 483, 487-489 [82 Cal. Rptr. 695]; People v. Miller, 252 Cal. App.2d 877, 882 [60 Cal. Rptr. 791]; People v. Burke, 208 Cal. App.2d 149, 157 [24 Cal. Rptr. 912]; but see Ovalle v. Superior Court, 202 Cal. App.2d 760, 763 [21 Cal. Rptr. 385] ["The quantification of the information does not necessarily improve its quality; the information does not rise above its doubtful source because there is more of it"].) (8) Although there may be circumstances where corroborative information from separate, unrelated sources will thereby establish its credibility, nevertheless in the instant case the record fails to show what information each informer furnished the officers, or whether the information was furnished independently by each informer. Accordingly, there is no basis for holding that their statements were truly corroborative.
(9) The People suggest that the "suspicious" noises heard by Officer Miller (people moving about and running; a sound like a plastic vial falling to the floor) constituted sufficient corroboration to uphold the subsequent arrest. Prior cases have held that suspicious conduct observed by officers may furnish the necessary corroboration for an untested informer. (People v. Talley, supra, 65 Cal.2d 830, 836 (defendant observed running through room at rear of house; another occupant lied concerning defendant's presence); Willson v. Superior Court, 46 Cal.2d 291, 295 [294 P.2d 36] (defendant observed while attempting to conceal and dispose of object); People v. Landry, 230 Cal. App.2d 775, 780 [41 Cal. Rptr. 202] (defendant uttered obscenity about "cops" and ran back into apartment); People v. Satterfield, 252 Cal. App.2d 270, 276-277 [60 Cal. Rptr. 733] (defendant ran into house, saying "It's the law.").) Without attempting to set forth a rule of general application, we believe that the sounds heard by the arresting officer did not sufficiently corroborate the informers' statements that defendant was selling narcotics. The apartment door was opened shortly after the officers announced their presence, no plastic vial was discovered by them, and the sounds described by Officer Miller were wholly consistent with innocent activity. (See People v. Superior Court, supra, 3 Cal.3d 807, *754 818-819; Remers v. Superior Court, 2 Cal.3d 659, 664 [87 Cal. Rptr. 202, 470 P.2d 11].)
Finally, the People contend that Officer Miller's observation of what he thought were two burnt marijuana seeds[2] sufficiently corroborated the information furnished by the informants and afforded reasonable cause for defendant's arrest. First of all, it is apparent that evidence of prior marijuana use is not strongly corroborative of information regarding alleged sales of narcotics, "mainly dangerous drugs." Secondly, it seems clear that the mere presence of two burnt marijuana seeds would not give rise to a reasonable inference or strong suspicion that the occupants of the apartment in which the seeds were found were presently guilty of a crime. (10) It is now well established that evidence of useless traces or residue of narcotic substances do not constitute sufficient evidence to sustain a conviction for possession of narcotics. (People v. Leal, 64 Cal.2d 504, 511-512 [50 Cal. Rptr. 777, 413 P.2d 665]; People v. Thomas, 246 Cal. App.2d 104, 111-112 [54 Cal. Rptr. 409]; People v. Johnson, 5 Cal. App.3d 844, 848 [85 Cal. Rptr. 238].) (11) Although the presence of two burnt marijuana seeds might reasonably suggest that defendant or another occupant of the apartment formerly possessed and used marijuana, that inference would not justify their arrest for present use, possession or sale. As stated in People v. Sullivan, 234 Cal. App.2d 562, 565 [44 Cal. Rptr. 524], approved by this court in Leal, "Were we to accept evidence of recent past possession of narcotics as equivalent to proof of present possession of narcotics, then we could charge every addict who was currently hot with possession of a narcotic, since he must have had possession of the narcotic in the recent past in order to come under its influence."
The People rely upon Fraher v. Superior Court, 272 Cal. App.2d 155, 163 [77 Cal. Rptr. 366], wherein it is stated that "The observation of marijuana debris which is insufficient to sustain a conviction is sufficient to constitute reasonable cause to make an arrest and to believe that a larger amount of marijuana may be present in close proximity to the debris. (See People v. Schultz, 263 Cal. App.2d 110....)" The foregoing language was unnecessary to the decision in Fraher since prior to defendant's arrest the officer directly observed an illegal (Health & Saf. Code, § 11555) water pipe used for smoking marijuana, and therefore had reasonable cause to arrest defendant without regard to the quantity of marijuana involved. People v. Schultz, supra, at page 114, relied upon in Fraher, did not involve the question of reasonable cause to arrest. Instead, the *755 court held that an officer had probable cause to search a vehicle for contraband upon observing a marijuana seed on the floor of the car. The court in Schultz (p. 114) stated that "We conclude the observation in an autobile of a substance appearing to be a narcotic, even though not in a usable amount, furnishes probable cause to believe a larger amount thereof may be located therein and authorizes a search of the automobile to find it. [Citations.]" (Italics added.)
It is apparent that the Schultz holding is limited to the search of automobiles and should not be extended to sanction warrantless house searches. Several cases have acknowledged a distinction between searches of houses and searches of cars: unlike a house search, a car may be searched without a warrant if the officer has probable cause to believe that it contains contraband. (Chambers v. Maroney, 399 U.S. 42, 48 [26 L.Ed.2d 419, 426, 90 S.Ct. 1975]; People v. Superior Court, supra, 3 Cal.3d 807, 816-817; People v. Webb, 66 Cal.2d 107, 114-115 [56 Cal. Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; People v. Burke, 61 Cal.2d 575, 578-579 [39 Cal. Rptr. 531, 394 P.2d 67]; People v. Terry, 61 Cal.2d 137, 152-153 [37 Cal. Rptr. 605, 390 P.2d 381].) "The difference in treatment between buildings and automobiles historically has been justified by the mobility of the automobile and the greater need for protection of the fundamental rights of privacy that attach to a man's home. [Citations.]" (People v. Terry, supra, at p. 153.)
(12) Apart from searches of automobiles, and other movable property, it is the general rule that probable cause to believe that a search will reveal contraband does not justify a warrantless search. (People v. Marshall, 69 Cal.2d 51, 57 [69 Cal. Rptr. 585, 442 P.2d 665]; People v. Burke, supra, 61 Cal.2d 575, 579; but see People v. Evans, 275 Cal. App.2d 78, 82-83 [79 Cal. Rptr. 714].) Therefore, even if the presence of two burnt marijuana seeds could, under the circumstances in the instant case, have supported an inference that a search would uncover larger, usable quantities of drugs, that inference should have been drawn by a neutral and detached magistrate, and not solely by Officer Miller. "However, strongly convinced officers may be that a search will reveal contraband, their belief ... does not justify a search without a warrant." (People v. Marshall, supra, at p. 57.)
(13) It follows that ordinarily an arrest may not be based solely upon suspicion that a subsequent search will reveal contraband.[3] (14, 15) It is settled that an arrest may not be used as a pretext to search for evidence. (Cunha v. Superior Court, 2 Cal.3d 352, 358 [85 Cal. Rptr. 160, 466 P.2d *756 704]; People v. Haven, 59 Cal.2d 713, 719 [31 Cal. Rptr. 47, 381 P.2d 927]), and that an arrest cannot be justified by the fruits of a subsequent search (People v. Privett, 55 Cal.2d 698, 702 [12 Cal. Rptr. 874, 361 P.2d 602]; People v. White, 231 Cal. App.2d 82, 86 [41 Cal. Rptr. 604]). (16) We conclude that there existed no reasonable cause to arrest defendant for possession, use or sale of marijuana, and that consequently the search which produced the evidence upon which defendant's conviction rests was illegal. Since there was no additional evidence of defendant's guilt, the judgment of conviction is reversed.
Wright, C.J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.
McCOMB, J.
I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Compton in the opinion prepared by him for the Court of Appeal in People v. Fein (Cal. App.) 90 Cal. Rptr. 42.
Respondent's petition for a rehearing was denied June 9, 1971. McComb, J., was of the opinion that the petition should be granted.
NOTES
[1] Since this search took place prior to June 23, 1969, the date of Chimel v. California, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], its scope was not limited by the rule in that case (Williams v. United States, 401 U.S. 646, 651 [28 L.Ed.2d 388, 392, 91 S.Ct. 1148]; People v. Edwards, 71 Cal.2d 1096, 1108 [80 Cal. Rptr. 633, 458 P.2d 713]).
[2] The seeds were not produced at trial. According to Officer Miller, the seeds, which were badly charred, turned to ash when placed in an envelope in Miller's pocket. Miller threw the envelope's contents into a garbage can after discovering this fact.
[3] To the extent they are contrary to the view expressed herein, the cases of Fraher v. Superior Court, supra, 272 Cal. App.2d 155, and People v. Evans, supra, 275 Cal. App.2d 78, are disapproved.