[Crim. No. 19006. Second Dist., Div. One. June 9, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ESTHER ODESAY SOTELO et al., Defendants and Appellants.

**Counsel**

Byron & Warner and Harvey E. Byron for Defendants and Appellants.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

**Opinion**

**LILLIE, J.**—In the same information but in separate counts defendants were charged with possession of heroin for sale (§ 11500.5, Health & Saf. Code); there was a preliminary hearing for each defendant. Motions to suppress the evidence pursuant to section 1538.5, Penal Code, were denied. Thereafter the cases were consolidated, each defendant submitting

the cause on the two transcripts of the testimony taken at the preliminary hearings. Each defendant was found guilty as charged, and appeals from the judgment.

On April 4, 1969, Officer Garrahan received information from a confidential informant that Vito and Esther Sotelo were selling heroin from certain described premises, that if he were to go there he would see numerous people coming in and going from the house, that people often fixed heroin in the garage area and that Vito drove a 1962 Ford, purple over grey, and recently was arrested for burglary in Downey; the informant also gave him defendants' telephone number. After this conversation he drove to the address and checked out the residence; he saw a 1962 Ford, purple over grey, parked alongside the garage at the rear of the premises, found the telephone to be registered there to Vito and the utilities to Esther, and checked with Downey police who gave him a photograph of Vito and told him Vito had been arrested for burglary.

Around 11:30 a.m. Officer Garrahan staked out the premises and during one and a half hours he saw numerous persons go in and out of the residence, and on at least two occasions an exchange of some kind between them and Vito, after which he saw Vito go back in the house, stay a short period of time and return to those persons who then left. He left to get more equipment and personnel but the last time he saw Vito was as he was leaving the location. An hour later, around 2 p.m. the officers returned to the premises and Officer Foresta was placed in a point of vantage; about 3:30 p.m. he reported by radio to Officer Garrahan that a male Negro, later identified as Curtis Bell, had entered the residence, stayed 5 or 15 minutes and left and was walking south on Willowbrook. Officer Garrahan approached Bell and identified himself; a conversation ensued whereupon he noted hypodermic needle marks over the veins of both arms, his voice was slow and slurred, his eyes were pinpointed and one of the puncture marks on his arms was leaking a clear fluid; he formed the opinion that Bell was under the influence of heroin, and arrested him. He then notified the other officers and they met at the premises; as he proceeded from the rear he saw in the area between the house and the garages numerous balloon fragments, many of which were knotted at the end in the manner in which heroin is commonly packaged.

Officer Garrahan and another officer walked to the front door and knocked; the inner door was open but the screen door was closed and locked. Esther came to the door; he identified himself as a police officer, displayed his badge and "told her [he] would like to talk to her." Esther unlatched the screen door and asked them to come in. Officer Garrahan

had about a minute's conversation with Esther then placed her under arrest for possession of narcotics; at this time she was the only adult present on the premises. After the arrest Officer Foresta was then admitted by another officer and they commenced a search of the premises; Esther asked Officer Garrahan if he had a search warrant and he replied he did not. The search revealed contraband in a bedroom closet—on the floor of the closet was a paper bag containing three balloons of heroin and a clear plastic bag of heroin; in the pocket of a man's suit were nine balloons containing 55.1 grams of heroin; in a coat pocket of another (man's) suit were 36 balloons containing 22.6 grams of heroin. The bedroom closet contained half male and half female clothing. It was stipulated that if Officer Foresta were called he would testify that in his opinion the narcotics found in the closet were possessed for sale.

At the hearing on the two motions to suppress, Esther testified that two officers knocked on her front door and after identifying himself one of them said, "I want to talk to you and I want to search your house"; she asked whether he had a search warrant and he said no; this conversation took place through the front screen door, then officers broke in through the kitchen door and knocked her down, she was arrested and the premises were searched.

On rebuttal Officer Foresta testified that a police officer let him in through the back door; Officer White testified to the same effect as Officer Garrahan; and it was stipulated that Officer Johnson's testimony would be that he was staked out in an alley behind the house and saw Tovar Camarillo, whom he had known to be an associate of Vito, leave the house; he saw some persons waving their arms in the direction of Camarillo and Camarillo run northbound into a parking lot; he followed in a police vehicle and saw Camarillo jump over a fence several blocks from the house; he ultimately effected Camarillo's arrest.

 Appellants' first contention is that Officer Garrahan did not have reasonable cause to arrest Esther thus the subsequent search was illegal. The search was clearly incident to Esther's arrest, hence was "not unreasonable" within the meaning of the Fourth Amendment if the arrest was lawful.[1] (*People* v. *Lara,* 67 Cal.2d 365, 373 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Webb,* 66 Cal.2d 107, 111-112 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].) The arrest was lawful if it was predicated on reasonable cause to believe Esther had committed a felony.

---

[1] Since this search took place April 4, 1969, prior to June 23, 1969, the date of *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], its scope was not limited by the rule in that case. (*Williams* v. *United States,* 401 U.S. 646 [28 L.Ed.2d 388, 91 S.Ct. 1148]; *People* v. *Edwards,* 71 Cal.2d 1096, 1108 [80 Cal.Rptr. 633, 458 P.2d 713].)

(§ 836, subd. 3, Pen. Code.) " 'Reasonable cause' has been defined as 'that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.' (*People* v. *Terry*, 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Ross*, 67 Cal.2d 64, 69 [60 Cal.Rptr. 254, 429 P.2d 606].)" (*People* v. *Fein*, 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583].) ■ The question of probable cause to justify an arrest without a warrant must be tested by the facts and circumstances which the record shows were known to the officers at the time they were required to act. (*People* v. *Terry*, 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Ross*, 67 Cal.2d 64, 69-70 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Talley*, 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].) ■ After a full hearing on the issue the trial court found the officer had probable cause, and there is sufficient evidence to support its determination. (*People* v. *Lara*, 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202].)

Earlier on the day of the arrest a confidential but untested informant gave certain information to Officer Garrahan which justified further investigation, but standing alone was not sufficient to constitute reasonable cause for an arrest or search. (*Mann* v. *Superior Court*, 3 Cal.3d 1, 6-7 [88 Cal.Rptr. 380, 472 P.2d 468]; *People* v. *Lara*, 67 Cal.2d 365, 374-375 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Talley*, 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564].) ■ However, such information may be sufficient if it is "corroborated, in essential respects, by other facts, sources or circumstances" as would justify the conclusion that reliance on the information was reasonable. (*People* v. *Reeves*, 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Lara*, 67 Cal.2d 365, 374-375 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Talley*, 65 Cal.2d 830, 836-837 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Gallegos*, 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174]; *People* v. *Davis*, 2 Cal. App.3d 230, 235 [82 Cal.Rptr. 561].) "Such corroboration need not itself amount to reasonable cause to arrest; its only purpose is to provide the element of 'reliability' missing when the police have had no prior experience with the informant. Accordingly, it is enough if it gives the officers reasonable grounds to believe the informant is telling the truth, for in this type of case the issue is 'not whether the information obtained by the officers emanated from a reliable source, but whether the officers could reasonably rely upon that information under the circumstances.' (*People* v. *Sandoval* (1966) 65 Cal.2d 303, 308-309 [54 Cal.Rptr. 123, 419 P.2d 187], citing *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294-295 [294 P.2d 36].)" (*People* v. *Lara*, 67 Cal.2d 365, 374-375 [62 Cal.Rptr. 586, 432 P.2d 202].) ■ "However, in order for corroboration to be adequate, it must pertain

to defendant's alleged *criminal* activity; accuracy of information regarding the suspect generally is insufficient. (*People* v. *Gallegos,* 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174]; *People* v. *Reeves,* 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Abbott,* 3 Cal.App.3d 966, 971 [84 Cal.Rptr. 40]; *People* v. *West,* 3 Cal.App.3d 253, 256 [83 Cal. Rptr. 223].)" (*People* v. *Fein,* 4 Cal.3d 747, 753 [94 Cal.Rptr. 607, 484 P.2d 583].)

Here the corroboration consisted of the facts and circumstances of defendant's conduct in the possession and sale of heroin on the premises obtained by the officers through independent police investigation and personal observations immediately following Officer Garrahan's conversation with the informant. In this connection appellants advance a factual argument urging that certain of the circumstances might also be reconciled with Esther's innocence, but such contention basically fails because this court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trial court could reasonably deduce from the evidence. (*People* v. *Mosher,* 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) First Officer Garrahan ascertained that both defendants resided on the premises then familiarized himself with Vito's appearance through recent police photographs. During an hour's surveillance in the late morning he saw numerous people going in and out of the premises and at least on two occasions an exchange take place between them and Vito after which Vito went into the house, stayed a short period and returned to these persons who then left; several hours later they apprehended Bell, who had just been in the house for only a short time and who had fresh hypodermic needle marks on the veins of both arms, one mark leaking a clear fluid, and whose voice was slow and slurred and eyes were pinpointed, for being under the influence of heroin. Officer Garrahan also saw in the area between the house and garages numerous balloon fragments, many of which were knotted in the end in the manner in which heroin is commonly packaged. The trial court properly determined that there was reasonable cause to believe Esther had committed a felony; the search was valid as incident to her lawful arrest.

Appellants contend that the search is invalid because the officer did not comply with section 844, Penal Code, in that he failed to announce his true purpose before entering. After knocking, Officer Garrahan displayed his badge and identified himself to Esther through the screen door and told her they wanted to talk to her whereupon she unlatched the screen door and asked the two officers to come in. In light of the officers' prior information and observation of criminal activities obviously

being conducted on the premises, we can only assume that had Esther not willingly unlocked the screen door and admitted the officers they would have forced entry.[2] "The requirements of section 844 are three: (1) identification by the police; (2) explanation of their purpose; and (3) demand for entry." (*People* v. *Superior Court*, 274 Cal.App.2d 578, 580 [79 Cal.Rptr. 55].) Appellants claim that the officer's statement "We want to talk to you" was an untrue statement of the purpose of their entry which obviously was to arrest her and/or Vito because he arrested Esther as soon as he entered. Nothing in the record supports appellants' implication of bad faith or intentional deception on the part of Officer Garrahan, but the fact is that, while Officer Garrahan did not arrest Esther "as soon as he entered" and first had a minute's conversation with her in which he told her he had information she was selling narcotics and he had arrested a man who had just come from the house for being under the influence of narcotics, his entry was for the purpose of arresting her. However, Officer Garrahan's failure to fully announce the purpose of his desired entry does not under the circumstances render the entry unlawful. ■ He did fully identify himself, satisfying the initial requirement, and identification without announcement of purpose can constitute substantial compliance with section 844 *"if the surrounding circumstances made the officers' purpose clear* to the occupants. . . ."* (Italics added.) (*People* v. *Rosales*, 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489]; *Greven* v. *Superior Court*, 71 Cal.2d 287, 292-293 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Peterson*, 9 Cal.App.3d 627, 632 [88 Cal.Rptr. 597]; *People* v. *Garnett*, 6 Cal.App.3d 280, 290 [85 Cal.Rptr. 769]; *People* v. *Superior Court*, 274 Cal.App.2d 578, 580-581 [79 Cal.Rptr. 55].) ■ As in *People* v. *Garnett, supra*, 6 Cal.App.3d 280, 290, "We encounter no difficulty in concluding that the trial court could reasonably have determined that the 'purpose' of the known police officers, in entering a building openly pervaded with narcotics, was obvious to its occupants." We think the requirement of full explanation of purpose was excused. Since from the circumstances it is a reasonable conclusion that during the day various persons had come to the house and bought narcotics and Bell had just made a purchase of heroin and had a "fix" on the premises, it was highly improbable that the occupant did not understand the purpose for which the police sought to enter. ■ "Contem-

---

[2]While nothing in the record shows that the officers "unholstered [their guns] or engaged in any other potentially coercive or threatening action" (*People* v. *Harrington*, 2 Cal.3d 991, 997 [88 Cal.Rptr. 161, 471 P.2d 961]), it can hardly be said. knowing what she did concerning her activities and those of Vito and the presence of the heroin on the premises, that Esther's consent to enter was not in submission to the implied assertion of authority under the language of *Parrish* v. *Civil Service Commission*, 66 Cal.2d 260, 269 [57 Cal.Rptr. 623, 425 P.2d 223].

poraneous commission of a felony certainly qualifies as a surrounding circumstance which would make the officers' purpose clear to the occupants of the premises and excuse the police from the need to explain why they desired admittance. (*People* v. *Cockrell,* 63 Cal.2d 659 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Carswell,* 51 Cal.2d 602, 607 [335 P.2d 99].)" (*People* v. *Superior Court,* 274 Cal.App.2d 578, 581 [79 Cal.Rptr. 55].) "Since it appeared that a sale of marijuana had been made in the Cockrells' home only minutes before the officers requested admittance, 'the purpose for which admittance' was 'desired' was reasonably apparent." (*People* v. *Cockrell,* 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116].) ▮ As to a demand, whether the conduct of the police in a given instance implicitly amounts to a demand for entry raises a question of fact. (*People* v. *Superior Court,* 274 Cal.App.2d 578, 581 [79 Cal.Rptr. 55].) ▮ Here there was an implied finding that a demand was made and we are obliged to accept the supporting inferences drawn by the trial court. When the officers knock on a door and an occupant answers through a screen door and they identify themselves as police and tell the occupant they would like to talk to her, and in response thereto she unlatches the door and admits the officers, we think that such conduct becomes the equivalent of a demand for entry and renders superfluous the use of phrases of formal demand such as, "open up" or "we demand to come in." ▮ In addition to the protection of the privacy of the individual in his home and the protection of innocent persons who may also be present on the premises when an arrest is made, the purpose and policies underlying section 844 are "(3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder." (*Duke* v. *Superior Court,* 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628]; *Greven* v. *Superior Court,* 71 Cal.2d 287, 292-293 [78 Cal.Rptr. 504, 455 P.2d 432].) "The notice given here, with the accompanying nonviolent entry through an open door, did no greater insult to 'the individual's right of privacy in his house' than is implicit in any search warrant. And the occupants were given timely warning that the police were entering, thus lessening the probability of the 'situation conducive to violence' that would inevitably attend the forcible entry of unannounced, unidentified, and ununiformed strangers." (*People* v. *Garnett,* 6 Cal. App.3d 280, 290-291 [85 Cal.Rptr. 769].)

▮ Finally, Vito contends that the record contains no substantive evidence to establish his guilt beyond a reasonable doubt. ▮ The People may rely on circumstantial evidence to connect the defendant with the commission of the crime charged and to establish beyond a reasonable doubt

that he committed it. (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal. Rptr. 529, 457 P.2d 321]; *People* v. *Huizenga,* 34 Cal.2d 669, 675-676 [213 P.2d 710]; *People* v. *Alcalde,* 24 Cal.2d 177, 184 [148 P.2d 627].) "It is the trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295]; *People* v. *Redrick,* 55 Cal.2d 282, 289 [10 Cal.Rptr. 823, 359 P.2d 255].) "The test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. (*People* v. *Hillery* (1965) 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].)" (*People* v. *Mosher,* 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].)

For unlawful possession of narcotics it is necessary to prove "that the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character. [Citations.]" (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) While "proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession" (*People* v. *Redrick, supra,* 55 Cal.2d 282, 285), a conviction will be sustained if the accused had the immediate right to exercise dominion and control over the known narcotic even though his possession is constructive (*People* v. *Wilson,* 256 Cal.App. 2d 411, 419 [64 Cal.Rptr. 172]) or is joint with that of another person. (*People* v. *Jones,* 267 Cal.App.2d 325, 328 [72 Cal.Rptr. 865]; *People* v. *Toms,* 163 Cal.App.2d 123, 128 [329 P.2d 90].) The defendant's possession need not be exclusive where more than one person is charged with possession of the same contraband, and the question of what persons had joint possession is one of fact. (*People* v. *Romero,* 161 Cal.App.2d 404, 405 [327 P.2d 205]; *People* v. *Jones,* 267 Cal.App.2d 325, 328 [72 Cal. Rptr. 865].)

We note the confusion existing in the transcripts relative to proof against Vito, but the evidence admitted "for all purposes" discloses that Vito was seen entering the premises around 11 or 11:30 a.m.; several hours later a significant amount of heroin was found in a bedroom closet containing half male and half female clothing; in a coat of a man's suit hanging in the closet were found nine balloons containing a total of 55.1 grams of heroin and in another coat to a man's suit, 36 balloons containing a total of 22.6 grams of heroin. In the light of the foregoing rules, we conclude there

was sufficient substantial evidence to support the finding that Vito had joint possession of the heroin for sale with his wife.

The judgments are affirmed.

Wood, P. J., and Thompson, J., concurred.