[No. E031600. Fourth Dist., Div. Two. Apr. 8, 2003.]

In re JOHNNY O., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY O., Defendant and Appellant.

COUNSEL

Susan K. Keiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Rhonda L. Cartwright-Ladendorf, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHLI, Acting P. J.**—In 1975, the California Legislature deliberately decriminalized the possession of a device for smoking marijuana. Nevertheless, the trial court found that appellant Johnny O. violated the law by possessing two bongs—devices for smoking marijuana. It reasoned that the possession of a device for smoking tetrahydrocannabinols is still a crime and that all marijuana contains tetrahydrocannabinol. The Legislature, however, limited the meaning of "tetrahydrocannabinols" in this context to synthetic tetrahydrocannabinols. Thus, appellant did not violate the law.

I

### FACTUAL BACKGROUND

On November 26, 2001, probation officers carried out a probation search of appellant's bedroom. They found two bongs—one made out of glass and one jury-rigged from a shampoo bottle. Appellant admitted using the bongs to smoke marijuana. Each bong contained a residue which later tested positive for cannabinoids. Cannabinoids are compounds containing tetrahydrocannabinol (THC). THC is the psychoactive ingredient in marijuana.

## II

### PROCEDURAL BACKGROUND

In a subsequent petition (Welf. & Inst. Code, § 602), it was alleged that appellant possessed a device for smoking or injecting a controlled substance in violation of Health and Safety Code section 11364. Meanwhile, in a notice of hearing (Welf. & Inst. Code, § 777), it was alleged that appellant had violated his preexisting probation conditions by truancy and by failure to complete his community service. The juvenile court found the possession allegation true. Appellant admitted the probation violations. The juvenile court continued appellant on probation, on conditions including a commitment to juvenile hall for 5 to 10 days and 15 hours of community service.

## III

### DISCUSSION

#### A. *The Statutory Language.*

■ " 'Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law.' [Citations.] We consider first the words of the statute because they are generally the most reliable indicator of legislative intent. [Citation.]" (*In re J.W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363], quoting *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].)

■ Health and Safety Code section 11364 provides: "It is unlawful to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking (1) a controlled substance specified in subdivision (b), (c), or (e), or paragraph (1) of subdivision (f) of Section 11054, *specified in paragraph* (14), (15), or *(20) of subdivision (d) of Section 11054*, specified in subdivision (b) or (c) of Section 11055, or specified in paragraph (2) of subdivision (d) of Section 11055, or (2) a controlled substance which is a narcotic drug classified in Schedule III, IV, or V." (Italics added.)[1]

Section 11054 lists "Schedule I" controlled substances. (§ 11054, subd. (a).) Among these are:

"(d) Hallucinogenic substances. [A]ny material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic

---

[1]From here on, all undesignated references to a subdivision will be to subdivisions of Health and Safety Code section 11054; all undesignated references to a statute by section number will be to the Health and Safety Code.

substances, or which contains any of its salts, isomers, and salts of isomers . . . : [¶] . . . [¶]

"(13) Marijuana. [¶] . . . [¶]

"(20) Tetrahydrocannabinols. Synthetic equivalents of the substances contained in the plant, or in the resinous extractives of Cannabis, sp. and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity . . . ."

The most obvious reason to conclude that subdivision (d)(20) does not include marijuana is that marijuana is specified separately, in subdivision (d)(13). If we were to conclude, contrariwise, that subdivision (d)(20) *does* include marijuana, then subdivision (d)(13) would be surplusage. "We will avoid an interpretation that makes surplusage of a portion of a statute. [Citation.]" (*People v. Johnson* (2002) 28 Cal.4th 240, 247 [121 Cal.Rptr.2d 197, 47 P.3d 1064].)

It would also make a nullity out of other statutes that provide generally more lenient penalty schemes for crimes involving marijuana. For example, section 11350, subdivision (a) makes it a felony to possess certain controlled substances, including "any controlled substance . . . specified in paragraph . . . (20) of subdivision (d) of Section 11054 . . . ." This offense is punishable by 16 months, two years, or three years in prison. (Pen. Code, § 18.) Under section 11357, however, the possession of marijuana is a misdemeanor; if the amount possessed is 28.5 grams or more, it is punishable by six months in jail and/or a $500 fine (§ 11357, subd. (c)); if the amount possessed is less than 28.5 grams, it is punishable only by a $100 fine (*id.*, subd. (b)).

Similarly, section 11351 makes it a felony to possess certain controlled substances for sale, including "any controlled substance . . . specified in paragraph . . . (20) of subdivision (d) of Section 11054 . . . ." This offense is punishable by two, three, or four years in prison. (§ 11351.) Under section 11359, however, the possession of marijuana for sale is a felony punishable by 16 months, two years, or three years in prison. (See Pen. Code, § 18.) Thus, it seems clear that the Legislature did not intend subdivision (d)(20) to include natural marijuana.

Cases from other jurisdictions, construing virtually identical language, have held that, for these reasons, "tetrahydrocannabinols" must be construed as limited to synthetics. (*U.S. v. McMahon* (1st Cir. 1988) 861 F.2d 8, 11; *Few v. State* (Tex.Crim.App. 1979) 588 S.W.2d 578, 582; *Aycock v. State*

(1978) 146 Ga.App. 489, 496 [246 S.E.2d 489, 494]; *People v. Campbell* (1976) 72 Mich.App. 411, 412 [249 N.W.2d 870, 870, 871].)

As if this were not enough, however, subdivision (d)(20) specifies that it is limited to synthetics. The operative wording of subdivision (d)(20) may be broken down as follows:

(a) "Synthetic equivalents of the substances contained"

(i) "in the plant . . . Cannabis, sp. . . . , or"

(ii) "in the resinous extractives of Cannabis, sp. and/or"

(b) "[S]ynthetic substances, derivatives, and/or their isomers with similar chemical structure and pharmacological activity."

Both prongs of this definition include only synthetic substances. By contrast, "marijuana" is defined as "all parts of the plant Cannabis sativa L. . . . ; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin." (§ 11018.) This definition includes only natural substances—substances that trace their origins back to a natural marijuana plant.

■ The People argue that, because subdivision (d)(20) begins with the word "tetrahydrocannabinols," it necessarily includes *any* THC, whether natural or synthetic. They characterize the remainder of the subdivision as a clarification, intended to make sure that synthetic, as well as natural, THC is included. We disagree. The word "tetrahydrocannabinols" at the beginning of subdivision (d)(20) is irrelevant. The Health and Safety Code specifically provides that "section headings do not in any manner affect the scope, meaning, or intent of the provisions of this code." (§ 6.) The language following "tetrahydrocannabinols" is the operative language, and it is limited to synthetics.

The People also argue that, elsewhere in the statute, when the Legislature wanted to define the general word "peyote," it used the word "[m]eaning," followed by the more specific words "all parts of the plant presently classified botanically as Lophophora williamsii Lemaire, whether growing or not, the seeds thereof, any extract from any part of the plant, and every compound, manufacture, salts, derivative, mixture, or preparation of the plant, its seeds or extracts . . . ." (§ 11054, subd. (d)(15).) They conclude that, because the Legislature used the general word "tetrahydrocannibinols"

followed by more specific words, but did *not* connect them with the word "meaning,". the specific words are not a definition.

It could equally be argued, however, that elsewhere in the statute, when the Legislature wanted to *avoid* defining a general word, it used "including." For example, it specified "Gamma hydroxybutyric acid . . . , *including* its immediate precursors, isomers, esters, ethers, salts, and salts of isomers, esters, and ethers, *including, but not limited to,* gammabutyrolactone . . . ." (§ 11054, subd. (e)(3), italics added.) Similarly, it specified, "Fenethylline, *including* its salts." (§ 11054, subd. (f)(2), italics added.)

The Legislature's failure to use *either* "meaning" *or* "including" in subdivision (d)(20) forces us to fall back on the generally accepted meaning of the construction it did use. This is a single word, "tetrahydrocannibinols," which is then restated as a noun phrase. A grammarian would call this "apposition." It indicates that the word and the phrase are equivalent. We are all used to seeing much the same construction in dictionary definitions. Thus, even assuming the word "tetrahydrocannabinols" was intended to be an operative part of the statute, it is defined and qualified by the language following it, which limits its meaning to synthetic substances.

Even if the Legislature had used the word "including," the principle of *ejusdem generis* would lead us to the same conclusion. " '*Ejusdem generis* applies whether specific words follow general words in a statute or vice versa. In either event, the general term or category is "restricted to those things that are similar to those which are enumerated specifically." ' [Citation.]" (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 [96 Cal.Rptr.2d 485, 999 P.2d 718], quoting *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160, fn. 7 [278 Cal.Rptr. 614, 805 P.2d 873], quoting *Martin v. Holiday Inns, Inc.* (1988) 199 Cal.App.3d 1434, 1437 [245 Cal.Rptr. 717].) When this principle is applied here, the general term "tetrahydrocannabinols" must be construed as restricted to substances similar to the specifically enumerated substances, all of which are synthetic.

The People argue that synthetic THC "generally" is swallowed in pill form, not smoked or injected; thus, they argue, the Legislature had no reason to prohibit the possession of a device for smoking or injecting THC unless it intended THC to include marijuana. In support of this argument, they cite *People v. Rigo* (1999) 69 Cal.App.4th 409 [81 Cal.Rptr.2d 624], which noted that: "Tetrahydrocannabinol (THC), the primary intoxicating ingredient in marijuana also has been available in synthetic form as a pill, Marinol,

approved by the Food and Drug Administration . . . ." (*Id.* at pp. 413-414.)[2] The fact that synthetic THC is usually taken as a pill falls short of proving that it can never be smoked or injected. Moreover, the Legislature *did* prohibit the possession of a device for smoking or injecting a number of substances which are generally taken in pill form, including methaqualone (§§ 11054, subd. (e)(2), 11364), hydrocodone (§§ 11055, subd. (b)(1)(J), 11364), and oxycodone (§§ 11055, subd. (b)(1)(N), 11364). In its wisdom, it has even prohibited the possession of a device for smoking or injecting a barbiturate *suppository.* (§§ 11056, subd. (c)(2), 11364). Desperate drug abusers do strange things.

 Finally, the People urge us to adopt the trial court's reasoning, which was that section 11364 should be construed in light of section 11364.5. In general, section 11364.5 requires any business which offers or displays "drug paraphernalia" to exclude minors. (§ 11364.5, subds. (a), (b), (c).) Its definition of "drug paraphernalia" specifically includes any device for smoking marijuana (§ 11364.5, subd. (d)(12)) and even more specifically includes a bong. (§ 11364.5, subd. (d)(12)(L).)

Section 11364.5, however, defines "drug paraphernalia" only "[a]s used in this section." (§ 11364.5, subd. (d).) Moreover, section 11364 does not use the words "drug paraphernalia." It does use the word "paraphernalia"; however, it makes the possession of paraphernalia illegal if, and only if, it is used for unlawfully injecting or smoking specified controlled substances. Section 11364.5, by contrast, broadly encompasses articles "intended for use or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance." (§ 11364.5, subd. (d).) Thus, it specifically extends to any number of articles that are not covered under section 11364, such as testing equipment, scales and balances, cutting agents, sifters, blenders, bowls, spoons, balloons and envelopes. (§ 11364.5, subd. (d)(4), (5), (6), (7), (8), (9).) Moreover, unlike section 11364, it specifically extends to articles used for smoking or injecting *any* controlled substance. Accordingly, it is of no use in the interpretation of section 11364.

B. *The Legislative History.*

Our construction of the language of sections 11054 and 11364 is in accordance with their legislative history.

---

[2]Actually, subdivision (d)(20) does not include Marinol; Marinol is a schedule III drug, under its generic name, dronabinol. (§ 11056, subd. (h).)

Under former section 11555, it was illegal to possess "any device, contrivance, instrument or paraphernalia used for unlawfully injecting or smoking a narcotic." (Stats. 1953, ch. 434, § 1, p. 1683.) Under former section 11001, marijuana was classified as a narcotic. (Former § 11001, subd. (d), added by Stats. 1961, ch. 368, § 1, p. 1415; see also former § 11001, subd. (h), added by Stats. 1945, ch. 955, § 1, p. 1839; former § 11001, subd. (i), added by Stats. 1939, ch. 60, § 11001, p. 755.) Thus, it was illegal to possess a device for smoking marijuana. (*People v. Nickles* (1970) 9 Cal.App.3d 986, 993 [88 Cal.Rptr. 763]; *Fraher v. Superior Court* (1969) 272 Cal.App.2d 155, 160 [77 Cal.Rptr. 366], disapproved on other grounds in *People v. Fein* (1971) 4 Cal.3d 747, 755, fn. 3 [94 Cal.Rptr. 607, 484 P.2d 583].)

In 1972, the California Legislature enacted the California Uniform Controlled Substances Act. (§ 11000 et seq.) It replaced former section 11001, defining narcotics, with sections 11054 through 11058, listing controlled substances. As originally enacted, section 11054 specified marijuana in subdivision (d)(10) and tetrahydrocannabinols, without any definition, in subdivision (d)(17). (Stats. 1972, ch. 1407, § 3, pp. 2990, 2992.)

At the same time, section 11364 replaced former section 11155. Section 11364, as originally enacted, provided: "It is unlawful to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking a controlled substance classified in Schedule I, II, III, IV, or V." (Stats. 1972, ch. 1407, § 3, p. 3019.) Accordingly, it remained illegal to possess a device for smoking marijuana.

In 1973, the Legislature amended section 11364 so as to provide, as relevant here: "It is unlawful to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking . . . a controlled substance . . . specified in paragraph (10), (11), (12), or (17) of subdivision (d) of Section 11054 . . . ." (Stats. 1973, ch. 1078, § 14, p. 2181.) As already noted, subdivision (d)(10) specified marijuana; subdivision (d)(17) specified THC. Accordingly, it was still illegal to possess a device for smoking marijuana.

In 1975, however, the Legislature amended section 11364 by deleting the reference to section 11054, subdivision (d)(10)—i.e., to marijuana. (Stats. 1975, ch. 248, § 6, p. 645.) In the same bill, it also:

1. Reduced possession of marijuana from a "wobbler" to a misdemeanor (§ 11357, subds. (b), (c); compare Stats. 1975, ch. 248, § 2, p. 641 with Stats. 1972, ch. 1407, § 3, p. 3015 and Stats. 1973, ch. 1078, § 8, p. 2176);

2. Reduced transporting or gratuitously furnishing marijuana from a felony to a misdemeanor, punishable by a $100 fine (§ 11360, subd. (c);

compare Stats. 1975, ch. 248, § 3, p. 642 with Stats. 1972, ch. 1407, § 3, p. 3017 and Stats. 1973, ch. 1078, § 11, p. 2178);

3. Decriminalized being under the influence of marijuana (see § 11550, subd. (a); compare Stats. 1975, ch. 248, § 8, p. 645 with Stats. 1972, ch. 1407, § 3, p. 3031 and Stats. 1973, ch. 1078, § 27, p. 2187); and

4. Decriminalized knowingly being in a room where marijuana is being used (see § 11365; compare Stats. 1975, ch. 248, § 7, p. 645 with Stats. 1972, ch. 1407, § 3, p. 3019 and Stats. 1973, ch. 1078, § 15, p. 2181).

In light of this overall agenda, it seems incontrovertible that the Legislature intended to make it legal to possess a device for smoking marijuana. As the Pacific Law Journal noted at the time: "Chapter 248 repeals all criminal sanctions against possessing paraphernalia used for smoking marijuana . . . ." (*Review of Selected 1975 California Legislation* (1976) 7 Pacific L.J. 237, 361.) Several cases have agreed that this amendment "decriminalized . . . the possession . . . of paraphernalia for the use of marijuana . . . . [Citations.]" (*A & B Cattle Co. v. City of Escondido* (1987) 192 Cal.App.3d 1032, 1042, fn. 14 [238 Cal.Rptr. 580]; accord, *Bamboo Brothers v. Carpenter* (1982) 133 Cal.App.3d 116, 122-124 [183 Cal.Rptr. 748]; *Music Plus Four, Inc. v. Barnet* (1980) 114 Cal.App.3d 113, 123-124 [170 Cal.Rptr. 419].) Although it remained illegal to possess a device for smoking THC, the Legislature did not intend this crime to swallow up the possession of a device for smoking marijuana; otherwise, the 1975 amendment would have been a nullity.

Finally, in 1984, the Legislature repealed and reenacted section 11054. In the process, it changed the unqualified word "tetrahydrocannabinols" to the present wording, which, as we have already discussed, limits it to synthetic substances. (Stats. 1984, ch. 1635, §§ 44, 44.5, pp. 5844, 5845.) It thereby eliminated the last remaining argument for construing section 11364 as prohibiting the possession of a device for smoking marijuana. (Cf. *State v. Derenne* (1981) 102 Wis.2d 38, 45-47 [306 N.W.2d 12, 15-16].)

In passing, the People suggest that, even if possession of a bong is not illegal under section 11364, it is illegal under section 11014.5. That section, like section 11364.5, defines "drug paraphernalia" so as to include a bong. (§ 11014.5, subd. (a)(8)(J).) Neither section 11014.5 nor any other statute, however, prohibits the mere possession of drug paraphernalia. (See § 11364.7, subd. (a) [prohibiting possession of "drug paraphernalia" with intent to deliver, furnish, or transfer].)

We therefore conclude that the possession of a device for smoking marijuana, without more, is not a crime in California.

## IV

### DISPOSITION

The order appealed from is reversed. The true finding on the allegation that appellant violated section 11364 is vacated. The juvenile court is directed to enter a not-true finding on this allegation, to dismiss the petition, and to hold a new dispositional hearing solely with respect to the Welfare and Institutions Code section 777 notice.

Ward, J., and Gaut, J., concurred.