Filed 4/26/16  P. v. Nay CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JOSHUA NAY,<br><br>      Defendant and Appellant. | H040384<br>(Santa Cruz County<br>Super. Ct. No. F24290) |

## I. INTRODUCTION

Defendant Joshua Nay resolved two pending cases by pleading no contest to the felonies of transporting marijuana on February 22, 2013 (count 6; Health & Saf. Code, § 11360)[1] and inflicting corporal injury on a cohabitant, the mother of his children, on August 19, 2013 (count 5; Pen. Code, § 273.5, subd. (a)).  He waived preparation of a presentence probation report and was immediately granted probation for three years on a number of terms and conditions, including 365 days in jail on each count, with imposition of sentence suspended.  The only term of probation to which defendant objects on appeal is to payment of $610 in fees and fines on the domestic violence charge.  (Pen. Code, § 1203.097, subd. (a)(5).)  He also seeks further review of his motion to suppress evidence of his possession of marijuana.

---

[1] Unspecified section references are to the Health and Safety Code.

At issue is whether defendant's apparent possession of a marijuana pipe or other circumstances justified his detention or pat-search. Before reaching the merits of the suppression motion, the Attorney General asks us to consider whether defendant is procedurally barred from obtaining further review because the marijuana transportation charge was added to a case in which he had not filed a suppression motion. As we will explain, the suppression motion ruling is reviewable. Possession of a marijuana pipe has not been a crime in California since 1976, so it did not justify defendant's detention in the absence of other evidence of his involvement in a crime. In this case, the officer was not asked to articulate any other basis for the detention. The Attorney General concedes that the trial court erred in imposing a "minimum" domestic violence fee of $610 when the statutory minimum is $500. After explaining our reasoning, we will reverse the judgment and remand for further proceedings.

## II. TRIAL COURT PROCEEDINGS

Defendant's conduct on the dates of February 22 and August 19, 2013, resulted in two complaints, two preliminary hearings, and two informations. The information in the first case (Santa Cruz County Superior Court case No. F24290) charged him with the felonies of possessing marijuana for sale (count 1; § 11359) and manufacturing concentrated cannabis, a controlled substance other than phencyclidine (count 2; § 11379.6, subd. (a)). The information in the second case (Santa Cruz County Superior Court case No. F25343) charged him with the felonies of forcible rape (count 1; Pen. Code, § 261, subd. (a)(2)), sexual penetration with a foreign object (count 2; Pen. Code, § 289, subd. (a)(1)), and child abuse (count 4; Pen. Code, § 273, subd. (a)) and the misdemeanor of battery (count 3; Pen. Code, § 243, subd. (e)(1)).[2]

---

[2] The details of defendant's conduct on August 19, 2013 are irrelevant to the issues on appeal.

2

After the first preliminary hearing and before the second information was filed, defendant filed a suppression motion that was denied after a hearing in September 2013. We will summarize the evidence at that hearing below.

On November 14, 2013, the prosecutor announced a resolution of both cases. The agreement, as originally explained by two assistant district attorneys, was to add a transportation of marijuana charge to the first case and a domestic violence charge to the second case. After the court asked about the terms and conditions of probation in the two cases, a deputy public defender asked for time to "work out a few kinks." After counsel conferred, the defender said, "I think we worked out the kink. The kink [is] that there doesn't need to be two cases, Your Honor. Just needs to be one case number, one probation, and that works out better." Both new charges would be added to the second case. Counsel agreed with the court's statement that the information in the second case would be amended to add two felony charges, "domestic violence battery with injury" (count 5; Pen. Code, § 273.5) and transportation of marijuana (count 6; § 11360) to which defendant would plead no contest and be granted three years formal probation.

Defendant and the prosecution waived preparation of a presentence report and the court immediately proceeded to sentencing, granting probation as stated above. Among the terms and conditions of probation was that defendant was to "[p]articipate in the 52-week batterers' treatment counseling program" and pay "[f]ees and fines on the domestic violence charge" of $610. Regarding the fines, defense counsel objected, "there hasn't been any kind of probation input, and the district attorney's office hasn't provided any information that [defendant] has the ability to pay these fines." The court responded that it had imposed "the statutory minimum amounts by law." On the prosecution's motion, the remaining charges in both cases were dismissed.

Defendant filed a notice of appeal that listed both case numbers and included a checked box stating the appeal was based on the denial of a motion to suppress evidence under Penal Code section 1538.5.

3

## A. *THE SUPPRESSION HEARING*

Santa Cruz Police Officer Bill Azua, the only witness at the hearing on the suppression motion, testified as follows.

On February 22, 2013 around 10:45 a.m., he was patrolling the downtown area of Santa Cruz in response to a call about loitering when he saw defendant and another male standing and talking near bicycle lockers in an alley underneath a parking garage. The area is known to law enforcement as a site for drug dealing, narcotics use, auto burglaries, consumption of alcohol, and loitering. Defendant was holding "what appeared . . . at [the] time to be a marijuana—a glass pipe in his hand." The officer did not see evidence of defendant smoking. At defendant's feet was a backpack. In the officer's experience, sellers of marijuana and "honey oil" often use backpacks to bring their wares to downtown Santa Cruz. No one asked the officer what "honey oil" is.

In response to the court's question whether possession of a marijuana pipe was a violation of the municipal code, the officer answered: "There is two, one that is smoking in an area where you're not allowed to be smoking. And the second, if it is, in fact, a marijuana pipe that he had, he needs to be in compliance with Prop 215 or Senate Bill 420 to have a medical marijuana card, or if he's in possession of a methamphetamine pipe, then he's going to get a citation for possession of paraphernalia."

Defendant reacted to the officer driving up by apparently putting the pipe in the backpack. The officer parked, got out of his car, and approached defendant, who seemed extremely nervous. The officer saw a bag sticking out of the backpack as he walked up. In the officer's experience, it warranted investigation to see a sudden movement in a drug marketplace in reaction to the presence of law enforcement.

The officer asked defendant if he could please see his identification. Defendant repeatedly asked in a hostile manner why the officer was harassing him. The officer said he would answer defendant's questions once he saw his identification. Because

defendant was escalating the situation, the officer called for backup. Three officers arrived.

Officer Azua granted defendant's request to call his father. After the phone call, defendant produced his identification from a back pocket. The officer explained he was responding to a loitering call and had seen defendant put a glass pipe in his backpack.

While the officer was describing his observations to defendant, defendant made a sudden movement to his backpack. The officer grabbed his hand and told defendant that he had not asked him to reach for anything.

For officer safety, the officer pat-searched defendant for weapons. Defendant was wearing loose clothing, which is capable of concealing different weapons. The officer explained that after grabbing defendant's hand, "I then conducted a pat[-]search of his pockets and felt what I believed to be a large glass pipe in his front pocket. I pulled it out and, in fact, it was a large glass—a marijuana bong that had suspected marijuana on it—in it, I should say." When asked, defendant said he did not have a medical marijuana card. Defendant sat down at the officer's request.

The officer said he was going to search defendant's backpack and did so. In the backpack was a mobile lab for manufacturing "honey oil," including 1.7 pounds of marijuana, a blow torch, a glass tube with marijuana at the bottom and honey oil at the top, numerous cans of butane gas, and an operable digital scale. The officer did not say he found a glass pipe in the backpack.

## B. TRIAL COURT RULING

After the officer testified at the suppression hearing, defendant contended that the officer had not articulated evidence of criminal activity, either smoking marijuana or

5

possession of a meth pipe. When the prosecutor[3] asserted that the officer had suspected a drug transaction, the court commented, "I think you made a lot of assumptions and I don't think you actually brought it in for the officer." "I don't think you ever . . . asked him what he thought was going on . . . ." When the court asked counsel if simple possession of a glass marijuana pipe was illegal, the certified law student answered, "I believe it is now an infraction . . . ." The assistant district attorney answered that, according to the officer, "It is a violation of the law possibly to have a marijuana pipe if there isn't any legal justification to have that pipe, yes." Defense counsel answered it was not illegal.

At the end of the suppression hearing, the trial court denied the motion after finding Officer Azua credible. The court reasoned as follows. "I have a very experienced officer who is in a high-narcotics area and a high-crime area and an area where officer safety is—there is increasing concern for officer safety because of the alleyway and the parking structure, which is above the officer at this point, and the officer being alone and being presented with two people that he's hoping to investigate." [¶] The officer had said he approached and used a calm tone of voice. He said [']please['] many times trying to get compliance reaching upon his 18 years of experience in having to deal with people on the street who, quite frankly, don't like police officers and he was very frank about that."

Defendant apparently felt he could refuse because he did refuse to comply until the officer allowed him to call his father. The situation escalated and the officer called for backup because defendant was moving stuff around and acting nervous. It was "perfectly appropriate" to investigate further once "[y]ou see a marijuana pipe or you see

---

[3] The prosecutor for the suppression hearing was a certified law student being supervised by an assistant district attorney.

something you think is a marijuana pipe . . . ." It was reasonable to ask for identification in order to issue a citation. "Just to make it clear, I have absolutely no problem at all with grabbing [defendant's] arm when he went down for the backpack[.] I think that's reasonable. [¶] The area I think that is a little bit closer is with the observations of the pipe and the arrival of other officers on the scene. Had it just been [the officer and defendant], I would also have no difficulty with the situation. But I do have facts in front of me where other officers were called[.] [W]e now have a situation with more officers. I don't have raising a voice[.] I don't have any orders or demands by officers. I do not see that they have inappropriately limited [defendant's] movements or abilities or decision – it appears to the Court – to consent and give him his ID. And I don't find that there, at that point, to be a detention. [¶] What happens next does end up in a detention. But I think it's appropriate for officer safety for the officer to reach for [defendant's] arm when [defendant] unexpectedly and very quickly reaches for his backpack. I don't find that to be an inappropriate intrusion of his Fourth Amendment rights."

## III. DISCUSSION

### A. FURTHER REVIEW OF THE SUPPRESSION MOTION

#### 1. The Suppression Ruling is Reviewable on Appeal

The Attorney General raises a technical question about the reviewability of the ruling on the suppression motion. Penal Code section 1538.5, subdivision (m) provides in part: "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that the judgment of conviction is predicated upon a plea of guilty. Review on appeal may be obtained by the defendant provided that at some stage of the proceedings prior to conviction he or she has moved for the return of property or the suppression of the evidence."

The Attorney General's contention is based on how the two cases against defendant were resolved. Defendant initially faced several drug charges in Santa Cruz County Superior Court case No. F24290 arising out of his conduct on February 22, 2013

7

and several domestic violence charges in Santa Cruz County Superior Court case No. F25343 arising out of his conduct on August 19, 2013. The suppression motion was filed in the first case before a complaint was filed in the second case, and the suppression motion was heard before an information was filed in the second case. There was no motion to suppress in the second case. Both cases were resolved on November 14, 2013 by adding two new charges to the second case, one being transporting marijuana in violation of section 11360, in exchange for defendant entering no contest pleas and being granted felony probation. It is undisputed that the new marijuana transportation charge was based on the same February 22 conduct as the original drug charges. Nevertheless, the Attorney General contends that after resolving his two cases by pleading no contest to the new charges, defendant was required to renew his suppression motion in the second case in order to obtain appellate review.

Penal Code section 1538.5, subdivision (f) authorizes a defendant to make a suppression motion at a preliminary hearing based on evidence produced at that hearing upon proper advance notice. As in this case, a defendant who is held to answer after a preliminary hearing is authorized "to renew or make the motion at a special hearing related to the validity or the search or seizure which shall be heard prior to trial . . . ." (*Id.* at subd. (i).)[4] "If the offense was initiated by complaint and no motion was made at the preliminary hearing, the defendant shall have the right to fully litigate the validity of a search or seizure on the basis of the evidence presented at a special hearing." (*Ibid.*) However, after a suppression motion is denied at a special hearing, there is no statutory authority for a defendant to renew the motion before or during trial. (*People v. Sotelo*

---

[4] Just as a defendant can renew an unsuccessful suppression motion made at a preliminary hearing, if a suppression motion is granted the statute similarly authorizes the prosecution two bites at the apple under specified circumstances that are not present here. (Pen. Code, § 1538.5, subds. (d), (e), (j), (k), (p).)

8

(1996) 47 Cal.App.4th 264, 273; *People v. Superior Court* (*Edmonds*) (1971) 4 Cal.3d 605, 609.) "According to committee reports prepared prior to the enactment of [Penal Code] section 1538.5, the intent underlying that section was to reduce the unnecessary waste of judicial time and effort involved in the prior procedures, whereby search and seizure questions could be repeatedly raised in criminal proceedings." (*People v. Superior Court* (*Edmonds*), *supra*, at p. 610.) The only statutory exception is that a defendant may make a new suppression motion during trial if there was no earlier opportunity to make the motion "or the defendant was not aware of the grounds for the motion . . . ." (Pen. Code, § 1538.5, subd. (h).)

The Attorney General cites *People v. Lilienthal* (1978) 22 Cal.3d 891 (*Lilienthal*) for the proposition that to preserve an issue of unlawful search or seizure for review, a defendant must make a suppression motion in the superior court. In that case, the magistrate denied a suppression motion made by the defendant at his preliminary hearing. After he was held to answer in the superior court, the defendant filed an unsuccessful Penal Code section 995 motion renewing the arguments made in his suppression motion. (*Id.* at p. 895.) The Supreme Court agreed that the defendant could not bypass a ruling by the superior court and obtain appellate review, but concluded that the defendant's Penal Code section 995 motion in the superior court had adequately preserved the issue for further review. (*Id.* at p. 896.) The court noted that Penal Code section 1538.5, subdivision (m), "specifically refers to [Penal Code] section 995 as a proper method of testing the validity of a search or seizure . . . ." (*Id.* at p. 897.)

The *Lilienthal* reasoning still applies after consolidation of the municipal and superior courts. (*People v. Richardson* (2007) 156 Cal.App.4th 574, 589.) "[T]he *Lilienthal* rule requires a defendant to raise the search and seizure before a superior court judge *acting as a superior court judge* to preserve that issue for appellate review." (*Id.* at p. 591; cf. *People v. Garrido* (2005) 127 Cal.App.4th 359, 364.)

9

Though this court has seen many cases resolved by plea agreement after denial of a suppression motion, and some of those agreements have resolved multiple cases pending against the same defendant, the parties have not cited and we have not found a decision authorizing or forbidding renewal of a suppression motion because the prosecution has filed a new charge under a different case number based on evidence that was the subject of the original unsuccessful motion.

The comprehensive plea bargain has been considered in a different context. "When several cases are resolved by a single plea bargain in which the defendant enters separate pleas, it is plain that there is one bargain but multiple cases." (*People v. Soria* (2010) 48 Cal.4th 58, 65 (*Soria*).) "Unconsolidated cases resolved jointly by plea bargain remain formally distinct for purposes of sentencing under section 667" and for purposes of imposing restitution fines. (*Id.* at p. 64.) The resolution of several cases by plea bargain is not an effective consolidation for purposes of the statute requiring imposition of a restitution fine " ' 'in every case . . . .' " (*Id.* at p. 66, quoting Pen. Code, § 1202.4, subd. (b).) Under *Soria*, we must reject defendant's contention that there was "an implied consolidation of the two cases." The record on appeal does not reflect an order consolidating the cases under Penal Code section 954.

However, Penal Code section 1538.5 does not contain the "in every case" phrase in Penal Code section 1202.4, subdivision (b). A defendant is entitled to appellate review if "at some stage of the proceedings prior to conviction" he has moved for suppression of evidence. (Pen. Code, § 1538.5, subd. (m).) Here defendant did file a motion under section 1538.5 in his first case that was determined at a special hearing after he was held to answer at his first preliminary hearing. Even though the court clerk captioned the minutes for November 14, 2013 as applying to the second case, the minutes and the reporter's transcript establish that the court was holding a hearing and conducting proceedings in both cases, namely resolving both cases by a comprehensive plea and imposing the agreed sentence by granting probation. The proceedings in the first case

10

involving two drug charges culminated in the addition of a new drug charge to the second case to which defendant agreed to plead no contest.

In his plea agreement, defendant did not specifically reserve the right to challenge the denial of his suppression motion on appeal, but he did not have to. Penal Code section 1538.5, subdivision (m) already preserves a defendant's right to further review after a guilty plea. California Rule of Court 8.304(b)(4)(A) provides that no certificate of probable cause is required after a plea of guilty or no contest if the notice of appeal states it is based on "[t]he denial of a motion to suppress evidence under Penal Code section 1538.5 . . . ," as stated in the notice of appeal in this case.

"The law neither does nor requires idle acts." (Civ. Code, § 3532.) Had the plea agreement, as it was originally described, added a count to the first case based on the same evidence that was the subject of the suppression motion, the Attorney General would have no basis for disputing that the suppression motion occurred at an earlier "stage of the proceedings" and was reviewable in this appeal. The fact that the plea agreement changed during the course of the hearing for simplicity and administrative convenience to add two counts to the second case instead of one count each to two cases does not negate that the drug charge was added to the second case in the course of the proceedings in the first case. It is debatable whether the trial court would have had jurisdiction to entertain a renewed suppression motion by defendant due to the original drug charges being restated as a new charge in a related case. In any event, defendant filed a notice of appeal in both cases seeking further review of a suppression motion that was denied in the first case. We conclude that he is entitled to that review under Penal Code section 1538.5, subdivision (m).

**2. *Standard of Review***

When a trial court ruling on a suppression motion has resolved evidentiary conflicts and made express and implied factual determinations about what happened, including what a police officer did, observed, thought, and believed, those findings that

11

are supported by substantial evidence are entitled to deferential review on appeal. (Cf. *People v. Zamudio* (2008) 43 Cal.4th 327, 342; *People v. Leyba* (1981) 29 Cal.3d 591, 597-598; *People v. Bates* (2013) 222 Cal.App.4th 60, 65.) We will not infer implicit findings inconsistent with the trial court's express findings. (See *People v. Manning* (1973) 33 Cal.App.3d 586, 603.) Appellate courts independently evaluate the constitutionality of what happened. Considering all the circumstances, we determine whether there was a detention, and, if so, whether the detaining officer was aware of facts making the detention objectively reasonable. (*People v. Dolly* (2007) 40 Cal.4th 458, 463; *People v. Zamudio, supra*, at p. 342; *People v. Leyba, supra*, at p. 598.)

**3.** *Grounds for Detention and Arrest*

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

"The federal Constitution's Fourth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits unreasonable seizures. Our state Constitution includes a similar prohibition. (Cal. Const., art. I, § 13.) 'A seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.' (*People v. Souza* (1994) 9 Cal.4th 224, 229 [(*Souza*)], quoting *Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16 [(*Terry*)].) Whether a seizure has taken place is to be determined by an objective test, which asks 'not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.' (*California v. Hodari D.* (1999) 499 U.S. 621, 628.) Thus, when police engage in conduct that would 'communicate[] to a reasonable person that he was not at liberty to ignore the police presence and go about his business,' there has been a seizure. (*Kaupp v. Texas* (2003)

538 U.S. 626, 629; *Florida v. Bostick* (1991) 501 U.S. 429, 437.)" (*People v. Celis* (2004) 33 Cal.4th 667, 673.)

A law enforcement officer who has a reasonable suspicion based on specific and articulable facts that a person was or is involved in committing a crime may stop that person to investigate that suspicion. (*Reid v. Georgia* (1980) 448 U.S. 438, 440; *U.S. v. Hensley* (1985) 469 U.S. 221, 229; *In re James D.* (1987) 43 Cal.3d 903, 914; *People v. Wilkins* (1986) 186 Cal.App.3d 804, 808.) In formulating a suspicion, officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " (*U.S. v. Arvizu* (2002) 534 U.S. 266, 273 (*Arvizu*); *People v. Hernandez* (2008) 45 Cal.4th 295, 299; cf. *U.S. v. Brignoni-Ponce* (1975) 422 U.S. 873, 885.)

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed" (*Devenpeck v. Alford* (2004) 543 U.S. 146, 152) if the person has "committed even a minor crime in his presence . . . ." (*Virginia v. Moore* (2008) 553 U.S. 164, 171.) "[S]o long as the officer has probable cause to believe that an individual has committed a criminal offense, a custodial arrest—even one effected in violation of state arrest procedures—does not violate the Fourth Amendment." (*People v. McKay* (2002) 27 Cal.4th 601, 618.)

**4.** *The Statutory Scheme Regulating Drug Paraphernalia*

Since enactment of California's Uniform Controlled Substances Act in 1972, marijuana has been classified as a Schedule I hallucinogenic substance. (Former § 11054, subd. (d)(10); Stats. 1972, ch. 1407, § 3, p. 2992; repealed by Stats. 1984, ch. 1635, § 44, p. 5841; § 11054, subd. (d)(13), enacted by Stats. 1984, ch. 1635, § 44.5, p. 5844.) Initially, it was a crime to possess any paraphernalia or instrument for smoking any Schedule I hallucinogenic substance (former § 11364; Stats. 1972, ch. 1407, § 3,

p. 3019), but the Legislature soon limited the statutory concern to paraphernalia facilitating smoking of only some of the 17 then-listed hallucinogenic substances. (Former § 11364; Stats. 1973, ch. 1078, § 14, p. 2181.)  In 1975, paraphernalia for smoking marijuana was deleted from former section 11364 (Stats. 1975, ch. 248, § 6, p. 645), and its possession has not been a state crime since.[5]

Possession of a pipe for smoking methamphetamine, however, is prohibited. Methamphetamine is a Schedule II stimulant (§ 11055, subd. (d)(2)) & former

---

[5]  In 2011, the provisions of former section 11364 were restated since repealed section 11364.1 (Stats. 2011, ch. 738, § 11), which became inoperative on January 1, 2015, with the provisions of section 11364 made inoperative until January 1, 2015. (Stats. 2011, ch. 738, § 10.)  As to section 11054, subdivision (d) hallucinogenic substances, section 11364.1 prohibited "any device, contrivance, instrument, or paraphernalia used for injecting or smoking (1) a controlled substance specified in … paragraph (14), (15), or (20) of subdivision (d) of Section 11054 . . . ."

The list of hallucinogens in section 11054, subdivision (d) includes:

"(14)  Mescaline.

"(15)  Peyote—Meaning all parts of the plant presently classified botanically as Lophophora williamsii Lemaire, whether growing or not, the seeds thereof, any extract from any part of the plant, and every compound, manufacture, salts, derivative, mixture, or preparation of the plant, its seeds or extracts (interprets 21 U.S.C. Sec. 812(c), Schedule 1(c)(12)).

"[¶] . . . [¶]

"(20)  Tetrahydrocannabinols.  Synthetic equivalents of the substances contained in the plant, or in the resinous extractives of Cannabis, sp. and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity such as the following: delta 1 cis or trans tetrahydrocannabinol, and their optical isomers; delta 6 cis or trans tetrahydrocannabinol, and their optical isomers; delta 3,4 cis or trans tetrahydrocannabinol, and its optical isomers."

Subsection (20) is understood to describe exclusively synthetic compounds.  (*In re Johnny O.* (2003) 107 Cal.App.4th 888, 893.)

Marijuana is listed in section 11054, subdivision (d)(13).

section 11364.1 prohibited possession of paraphernalia for smoking a controlled substance "specified in paragraph 2 of subdivision (d) of Section 11055 . . . ."

**5. *Possession of a Marijuana Pipe Without More Does Not Justify a Detention***

As just established, since 1976 it has not been a crime in California to possess a marijuana pipe. (*In re Johnny O.*, *supra*, 107 Cal.App.4th 888, 897.)[6] A law enforcement officer cannot detain a person for possessing a marijuana pipe without some other indication that the person is involved in criminal activity.[7]

The Attorney General does not assert that Officer Azua's mistake of law was reasonable. Instead, the Attorney General suggests that the officer's observation "gave the officer cause to believe [defendant] possessed an opium pipe or an instrument for smoking a controlled substance in violation of former Health and Safety Code section 11364.1." The Attorney General goes further in saying that the officer made a reasonable factual error in mistaking the marijuana pipe at a distance for a methamphetamine pipe.

We recognize that "[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and

---

[6] Defendant argues in his opening brief that the Santa Cruz Municipal Code does not prohibit possession of a marijuana pipe. The Attorney General does not disagree with this argument on appeal. We therefore have no occasion to take judicial notice of sections 6.90.070 or 6.92.080 of the Santa Cruz Municipal Code or to interpret those sections.

[7] We recognize that a separate statute, section 11364.5, regulates keeping, displaying, or offering for sale "drug paraphernalia" in a "place of business …" unless the paraphernalia is displayed is in a separate room limited to adults or accompanied minors. The definition of " 'drug paraphernalia' " in that statute includes many kinds of pipes "intended" or "designed for use in ingesting, inhaling, or otherwise introducing marijuana" and other drugs "into the human body . . . ." (§ 11364.5, subd. (d)(12).) There was no testimony that Officer Azua suspected defendant of violating this statute.

15

establish whether the activity is in fact legal or illegal . . . ." (*In re Tony C.* (1978) 21 Cal.3d 888, 894; *Souza, supra,* 9 Cal.4th 224, 233; cf. *Arvizu*, *supra*, 534 U.S. 266, 277 ["A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."].)

However, in the absence of evidence that a particular marijuana pipe has been used for smoking methamphetamine, we believe (and hope) that whether a marijuana pipe is usable for smoking methamphetamine or another prohibited substance "is sufficiently beyond common experience" as to require an expert opinion. (Evid. Code, § 801, subd. (a); cf. *People v. Nickles* (1970) 9 Cal.App.3d 986, 993 [appropriate to receive expert testimony on whether a pipe was a "device, contrivance, instrument, or paraphernalia used for smoking marijuana"].) Here, Officer Azua correctly stated that defendant could be cited if he were in possession of a methamphetamine pipe, but the officer never said that he thought based on his experience the pipe was a meth pipe. We do not understand the Attorney General to be asking us to take judicial notice of alternate uses for a marijuana pipe. We cannot ascribe to the officer observations he did not articulate, particularly expert observations. "A detention may not be justified after the fact on a subsequently contrived basis not relied on by the officer at the time the events occurred." (*People v. Aldridge* (1984) 35 Cal.3d 473, 480; cf. *People v. Bower* (1979) 24 Cal.3d 638, 647.)

The Attorney General also suggests several other reasons Officer Azua could have had for detaining defendant. "[A] person carrying a marijuana pipe may also possess marijuana." As marijuana was commonly sold from backpacks in the area, defendant's presence in the area with a backpack created a reasonable suspicion that he "and his companion were engaged in a sale." This court has upheld detentions when an officer has described having similar suspicions based on his or her experience with drug possession and drug sales. However, as the trial court pointed out during argument on the motion, the prosecutor never elicited from the officer "what he thought was going

16

on . . . ." No one asked the officer at the suppression hearing in what criminal activity he suspected defendant to be involved apart from possession of a marijuana pipe nor did he volunteer such information. On appeal we review whether the officer's subjective suspicion was objectively reasonable based on the specific and articulable facts "known or apparent to the officer . . . ." (*In re Tony C.*, *supra*, 21 Cal.3d 888, 893.) We do not review the reasonableness of unarticulated suspicions the officer might have had. (Cf. *Agar v. Superior Court* (1971) 21 Cal.App.3d 24, 30 [absent evidence an officer believed that a suspect possessed a baggie, "it becomes illogical for us to analyze whether such a contemplation would have been reasonable had it been entertained"].)

Defendant and the Attorney General agree that defendant was detained at least when the officer grabbed his arm, though they disagree about whether he was already detained once he reluctantly complied with the officer's repeated requests to produce his identification. We need not resolve this dispute, because at neither stage of the encounter did the officer have an objectively reasonable basis to detain defendant.

**6.** *Removal of a Pipe from Defendant's Pocket was Unjustified*

Defendant also contends that Officer Azua made no observations justifying the pat-search. He did not reasonably believe defendant was armed and possession of a marijuana pipe did not justify the pat-search.

A police officer who "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime," may pat-search the person for weapons. (*Terry*, *supra*, 392 U.S. 1, 27.) "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Ibid.*) "[T]here must be objective factors which reasonably indicate to the officer that this type of a search is necessary for his protection." (*People v. Thomas* (1971) 16 Cal.App.3d 231, 234.)

Bulky clothing, like loose clothing, can be used to conceal a weapon. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1082; *People v. Lopez* (2004) 119 Cal.App.4th 132, 137; *In re William V.* (2003) 111 Cal.App.4th 1464, 1472; *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1241.) This does not mean that everyone wearing loose-fitting or heavy clothing is subject to a pat-search without another indication of weapon possession. (*In re H. H.* (2009) 174 Cal.App.4th 653, 660.)

Even if we assume for the sake of discussion that defendant's loose clothing, confrontational attitude, and presence in a high-crime area justified a pat-search for weapons (e.g. *People v. Rios* (2011) 193 Cal.App.4th 584, 599), still the officer articulated no basis for removing what felt to him like "a large glass pipe in his front pocket."

In *People v. Limon* (1993) 17 Cal.App.4th 524 (*Limon*), this court explained the then-recent decision in *Minnesota v. Dickerson* (1993) 508 U.S. 366 (*Dickerson*). "Once an officer feels that a concealed object is not a weapon, however, the officer cannot continue to palpate the object without probable cause to search the suspect. 'Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search ... the protection of the police officer and others nearby." ' " (*Limon, supra*, at p. 536, quoting *Dickerson*, *supra*, at p. 378.)

Here, the officer articulated that he felt a large glass pipe in defendant's pocket. He did not say he believed it was a weapon or could be used as a weapon. He did not say he believed it was contraband because it was a pipe for smoking controlled substances other than marijuana. Again the Attorney General ascribes observations to the officer that he did not make, that from feeling the pipe the officer had probable cause to believe defendant possessed marijuana. The limited testimony elicited from the officer did not justify his removal of the pipe from defendant's pocket.

18

Once the officer observed marijuana fragments in the glass pipe, he arguably had probable cause to search defendant and his backpack, but we have concluded that the officer's removal of the glass pipe from defendant's pocket was unjustified, as the officer articulated neither a reason to believe the pipe was a weapon nor probable cause to believe the concealed pipe was contraband. Accordingly, defendant's suppression motion should have been granted.

## B. *DOMESTIC VIOLENCE FEE*

Penal Code section 1203.097 requires imposition of certain terms of probation when probation is granted for a crime of domestic violence, including: "(a)(5)(A) A minimum payment by the defendant of a fee of five hundred dollars ($500) to be disbursed as specified in this paragraph. If, after a hearing in open court, the court finds that the defendant does not have the ability to pay, the court may reduce or waive this fee. If the court exercises its discretion to reduce or waive the fee, it shall state the reason on the record." [¶] . . . [¶] (D) The fee imposed by this paragraph shall be treated as a fee, not as a fine . . . ."[8]

In this case, defense counsel objected to an imposition of $610 for "[f]ees and fines on the domestic violence charge" on the basis there was no evidence of defendant's ability to pay. Instead of finding defendant able to pay, the court responded that it had imposed "the statutory minimum amounts by law."

---

[8] Penal Code section 1203.097 also provides "A defendant shall bear the burden of demonstrating lack of his or her ability to pay" in subdivision (a)(11)(B), but that sentence is in a paragraph that begins "For any order to pay a fine, to make payments to a battered women's shelter, or to pay restitution as a condition of probation under this subdivision, the court shall make a determination of the defendant's ability to pay." As the domestic violence fee is not a fine, it does not appear that this paragraph applies to that fee.

19

Defendant contends that the trial court misunderstood its discretion.  The Attorney General concedes that the minimum amount is $500, not $610, and asks us to correct the award to $500.

Because defendant is entitled to resentencing based on the erroneous denial of his suppression motion, we need not determine whether defendant adequately raised the issue of his inability to pay the minimum fee.  The trial court will have another opportunity to impose the minimum domestic violence fee and to determine whether defendant is able to pay it.

## IV. DISPOSITION

The judgment (order of probation) is reversed.  The cause is remanded with directions to the trial court to (1) vacate the order denying the suppression motion and enter an order granting the motion, (2) permit defendant to withdraw his no contest pleas, (3) resentence defendant if he does not withdraw both his no contest pleas, including a reconsideration of the amount of the domestic violence fee, and (4) enter other appropriate orders.

 

 

_____
               RUSHING, P.J.

WE CONCUR:

_____
       PREMO, J.

_____
     MÁRQUEZ, J.

***People v. Nay***
**H040384**